

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed December 4, 2019**

United States Bankruptcy Judge

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 19-33756 (SGJ) |
| TARRANT COUNTY SENIOR LIVING | § | |
| CENTER, INC.,[1] | § | Chapter 11 |
| | § | |
| Debtor. | § | |

### FINAL ORDER (1) AUTHORIZING THE DEBTOR TO USE THE CASH COLLATERAL OF UMB BANK, N.A., AS TRUSTEE; (2) PROVIDING UMB BANK, N.A., AS TRUSTEE, ADEQUATE PROTECTION; AND (3) MODIFYING THE AUTOMATIC STAY

This *Final Order (1) Authorizing the Debtor to Use the Cash Collateral of UMB Bank, N.A., as Trustee; (2) Providing UMB Bank, N.A., as Trustee, Adequate Protection; and (3) Modifying the Automatic Stay* (this "Final Order") is entered upon the motion [Docket No. 14] (the "Motion") of the above-captioned debtor (the "Debtor" or "Borrower") requesting entry of an order authorizing the Debtor to use the cash collateral of UMB Bank, N.A., in its capacity as Trustee (the "Trustee"), and to provide the Trustee with adequate protection, upon terms agreed

---

[1] The last four digits of the Debtor's federal tax identification number are 8602.

to by the Debtor and the Trustee. Capitalized terms used in this Final Order but not specifically defined have the meanings set forth in the Motion.

Upon the terms of the Motion, the stipulations, acknowledgements, and based further on the record of these proceedings, the Court makes the following findings of fact and rulings of law:

**The Debtor's Chapter 11 Case; Procedural Background; Jurisdiction; Notice**

A. On November 5, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and thereby commenced a case thereunder (the "Chapter 11 Case"). The Debtor is operating its business and managing its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B. As of the date hereof, no trustee or examiner has been appointed in this Chapter 11 Case.

C. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

D. The Debtor has properly served notice of the Motion pursuant to sections 102, 361, 362, and 363 of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure 2002 and 4001, and the Local Bankruptcy Rules of this Court (the "Local Rules"), as applicable, as described more fully in paragraph 3 hereof.

**The Secured Bond Obligations**

E. The Issuer and the Bond Trustee are parties to an Indenture of Trust, dated as of October 1, 2009 (the "Bond Indenture"), pursuant to which the Tarrant County Cultural Education Facilities Finance Corporation (the "Issuer") issued its Retirement Facility Revenue Bonds (The Stayton At Museum Way Project), Series 2009A, Series 2009B and Series 2009C

2

(collectively, the "Bonds") in the initial principal amount of $166,575,000.

F. The Issuer loaned the proceeds of the Bonds to the Debtor pursuant to a Loan Agreement, dated as of October 1, 2009 (the "Loan Agreement").

G. The Debtor and the Master Trustee entered into a Master Bond Indenture, Deed of Trust and Security Agreement, dated as of October 1, 2009 (as amended by the Supplemental Indentures defined below and as it may be further amended from time to time in accordance with its terms, the "Master Indenture"), pursuant to which the Debtor issued the Tarrant County Senior Living Center Inc. Series 2009A, Series 2009B and Series 2009C Notes (collectively, the "Notes") to provide for its loan repayment obligations under the Loan Agreement.

H. The Debtor and the Master Trustee entered into a Supplemental Indenture Number 1, dated as of October 1, 2009 (the "First Supplemental Indenture"), pursuant to which the terms and conditions upon which the Notes were authenticated, issued and delivered were clarified, and a Supplemental Indenture No. 2, dated as of May 10, 2019, pursuant to which provisions relating to draws on the LSA (as defined below) were added (the "Second Supplemental Indenture" and together with the First Supplemental Indenture, the "Supplemental Indentures"). The Bond Indenture, the Master Indenture, the Loan Agreement, the Supplemental Indentures, the Notes, the LSA and any other documents executed in connection with such documents or the Bonds are referred to herein as the "Bond Documents".

I. The Trustee has the right to enforce the Borrower's obligation to pay the amounts borrowed from the Issuer, pursuant to its rights under the Master Indenture, and by the fact that the Issuer's rights under the Loan Agreement and the Notes (and its rights under the other Bond Documents) were assigned to the Trustee pursuant to the Bond Indenture.

J. Subject only to the provisions regarding certain escrowed Entrance Fees set forth in paragraph 23 below, the Trustee has a security interest, lien and mortgage on substantially all

3

of the Borrower's assets. Specifically, pursuant to the Master Indenture, the Debtor has pledged and granted to the Trustee certain collateral, including but not limited to: (i) a first mortgage lien on the Debtor's continuing care retirement community located in Fort Worth, Texas (the "Facility") and the land on which the Debtor's Facility is located; (ii) a security interest in all personal property owned or hereafter acquired by the Debtor; and (iii) a security interest in all of the Gross Revenues (as defined in the Bond Documents) of the Debtor. In addition, all moneys and securities held by the Trustee have been pledged and assigned to the Trustee as security for the payment amounts owed on account of the Bonds. All of the collateral described in this paragraph J is referred to as the "Prepetition Collateral". The Trustee's liens on the Prepetition Collateral are referred to herein as the "Prepetition Liens".

K.     In addition, under the terms of the Bond Documents, certain accounts were established and are held by the Trustee, including, but not limited to the following funds, each as defined in the Bond Documents: the Bond Fund, the Construction Fund, the Reserve Fund, the Entrance Fee Fund, the Working Capital Fund, the Liquidity Support Account, and the Revenue Fund (collectively, the "Trustee-Held Funds"). As of the Petition Date, the Trustee-Held Funds totaled approximately $7.86 million.

L.     The Debtor acknowledges and agrees, and the Court finds, that the Trustee-Held Funds are held in trust for the holders of the Bonds (the "Bondholders"). In the alternative, the Debtor acknowledges that the Trustee holds a validly perfected possessory security interest in the Trustee-Held Funds, and is entitled to access the Trustee-Held Funds in accordance with the terms of the Bond Documents. To the extent that the automatic stay applies to such Trustee-Held Funds pursuant to section 362(a) of the Bankruptcy Code, as adequate protection for the use of the Trustee's Cash Collateral (as defined below), the Debtor stipulates to relief from such stay for the purpose of allowing the Trustee to administer and apply the Trustee-Held Funds in

accordance with the Bond Documents, including in the case of any funds held in the Liquidity Support Account. The Trustee-Held Funds shall be administered and applied as set forth in the Bond Documents and for the express purposes set forth therein, and shall not be used or made available to Debtor as Cash Collateral or otherwise pursuant to this Final Order or any other order entered in this Chapter 11 Case. Notwithstanding the foregoing acknowledgments in this paragraph L, if there is a breach of the Plan Support Agreement dated May 10, 2019 (as described more fully below, the "PSA") by a Directing Holder (as defined below), the Bond Trustee, or the Master Trustee at the direction of the Directing Holders that prevents the consummation of the Plan of Reorganization (as defined below) or causes a termination of the PSA, any remaining amounts in the Liquidity Support Account shall, upon written request by Lifespace Communities, Inc. ("Lifespace"), be returned to Lifespace as set forth in the LSA.

**The Plan Support Agreement, the Membership Substitution, the Liquidity Support Agreement and the Plan of Reorganization**

M.      On May 10, 2019, the Trustee entered into the PSA with the Debtor, Lifespace, and certain bondholders constituting a majority of the holders of the Bonds (the "Directing Holders"), which among other things committed the Trustee and the Directing Holders to support a pre-packaged plan of reorganization to be filed by the Debtor on the Petition Date of this Chapter 11 Case (as such plan of reorganization was filed [Docket No. 17], the "Plan of Reorganization"). In addition, under the PSA, the Debtor and the Trustee agreed to the form of this Final Order to allow the Debtor to use the Trustee's Cash Collateral as set forth herein. The Debtor distributed the Plan of Reorganization, an accompanying disclosure statement, and a ballot to all creditors and other parties in interest entitled to vote on the Plan of Reorganization prior to the filing of this Chapter 11 Case. As described more fully in the First Day Declaration filed on the first day of this Chapter 11 Case, each class of creditors entitled to vote on the Plan

5

of Reorganization voted in favor of confirmation.

N.     At the same time that the PSA was entered into, Lifespace and the Debtor, among other parties, entered into an Affiliation Agreement dated May 10, 2019 (the "Affiliation Agreement"), pursuant to which it was agreed that Lifespace would be substituted for Senior Quality Lifestyles Corporation ("SQLC") as the sole member of the Debtor (the "Membership Substitution"). The Membership Substitution occurred on June 20, 2019. At the same time that the Membership Substitution occurred, the Debtor, Lifespace, and the Trustee entered into a Liquidity Support Agreement (the "LSA"). Under the LSA, Lifespace provided $3,000,000 (the "Interim LSA Amount") to be held by the Trustee in a newly-created account (the "Liquidity Support Account"), held under the Master Indenture.

**The Bond Claim**

O.     The Debtor stipulates that as of the Petition Date, the amounts due and owing under the Bonds and Bond Documents are not less than:

(i)     unpaid principal in the amount of $105,795,000;

(ii)    accrued but unpaid interest on the Bonds in the amount of $6,288,298.61 (the aggregate of (i) and (ii) are referred to herein as the "Bond Claim"), which interest continues to accrue on the Bonds and will be added to the Bond Claim; and

(iii)   unliquidated, accrued and unpaid reasonable fees and expenses of the Trustee and its professionals incurred through the Petition Date. Such amounts when liquidated shall be added to the Bond Claim.

The Trustee reserves any and all rights to amend the Bond Claim. Nothing herein shall be deemed to be a waiver of such rights. In the event the Trustee amends the Bond Claim to increase the amount of such claim, the Debtor may challenge any amounts in excess of (i) and (ii) above.

EAST/170267621

**Use of Cash Collateral and Need for Adequate Protection**

P.    The Debtor has requested the use of the Trustee's Cash Collateral in connection with the Chapter 11 Case to preserve the value of its business and implement the Plan of Reorganization.  Pursuant to the Bankruptcy Code, the Debtor is required to provide adequate protection to the Trustee for the use of such Cash Collateral.  As noted above, the form of this Final Order was agreed to by the Debtor and the Trustee as part of the Second Forbearance Agreement dated May 10, 2019 (the "Forbearance Agreement") and PSA, including the adequate protection provided herein.  The Trustee has informed the Debtor and the Court that the Trustee does not consent to the use of Cash Collateral except upon the terms and conditions of this Final Order.

Q.    Without the use of Cash Collateral, the Debtor would suffer immediate and irreparable harm and would likely be required to cease operations immediately or, at a minimum, the Debtor's inability to use Cash Collateral would disrupt the Debtor as a going concern and would otherwise not be in the best interests of the Debtor or its creditors, including the Bondholders and residents of the Debtor's Facility.  In lieu of giving the Trustee relief from the automatic stay or attempting to obtain this Court's approval for use of Cash Collateral on a non-consensual basis, the Debtor wishes to provide adequate protection of the liens and security interests of the Trustee in Cash Collateral and other Prepetition Collateral on the terms set forth in this Final Order, reflecting the agreement of the Debtor and the Trustee.

R.    The Trustee is willing to consent to the use of its Cash Collateral by the Debtor on the terms set forth in this Final Order, including: (i) that Cash Collateral may only be used solely for the categories of expenses set forth in the Cash Collateral Budget (as defined below); and (ii) upon the full amount of the Interim LSA Amount being validly withdrawn from the Liquidity Support Account ("LSA Depletion"), Cash Collateral may be used solely in the amounts and

EAST/170267621

categories set forth in the Updated Cash Collateral Budget (as defined below).

S. The terms of the proposed use of Cash Collateral, and this Final Order are fair and commercially reasonable, reflect the Debtor's prudent exercise of business judgment consistent with its fiduciary duties and constitute reasonably equivalent value and fair consideration. Good cause has been shown for the entry of this Final Order.

T. To the extent any portion of the foregoing constitute rulings of law, they shall constitute this Court's rulings with respect to the matters so-stated.

**NOW, THEREFORE, THE COURT HEREBY ORDERS AS FOLLOWS:**

1. <u>Disposition</u>. The Motion is granted on a final basis, on the terms set forth in this Final Order. Any objections to the relief sought in the Motion that have not been previously resolved or withdrawn, and all reservations of rights contained therein, are overruled on the merits.

2. <u>Jurisdiction</u>. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334, and this matter constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409. The Debtor has operated its business and managed its property as Debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3. <u>Notice</u>. The Debtor has properly served notice of the Motion pursuant to sections 102, 361, 362, and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001, and the Local Rules, which notice was sent to, among others: (i) counsel to the Trustee; (ii) each of the Debtor's twenty-three (23) largest unsecured creditors as set forth in the list filed by the Debtor in the Chapter 11 Case pursuant to Bankruptcy Rule 1007(d); (iii) the Office of the United States Trustee for the Northern District of Texas; (iv) the Office of the Attorney General of the State of Texas; (v) all known holders of liens on the Debtor's assets; (vi) all applicable governmental

agencies to the extent required by the Bankruptcy Rules or Local Rules; (vii) all parties that have filed a notice of appearance in this Chapter 11 Case; and (viii) those who have formally appeared and requested service in these proceedings pursuant to Bankruptcy Rule 2002. This notice is appropriate in the particular circumstances and is sufficient for all purposes under the Bankruptcy Code and the applicable Bankruptcy Rules and Local Rules in respect to the relief requested.

       4.    <u>Good Cause</u>. Good cause has been shown for entry of this Final Order.

       5.    <u>Authorization to Use Cash Collateral</u>. The Debtor is authorized to use, as cash collateral (as defined in section 363 of the Bankruptcy Code), Gross Revenues (as defined in the Master Indenture) and other cash received by the Debtor in the ordinary course of operations of its business, including all amounts currently held in the Debtor's operating account at Banker's Trust (collectively, the "<u>Cash Collateral</u>"), until the earlier of (i) the Debtor's ability to use Cash Collateral terminates as the result of the occurrence of a Termination Event (as set forth below) or (ii) February 29, 2020. Such use of Cash Collateral is only permitted in accordance with the terms of this Final Order. Prior to a LSA Depletion, use of Cash Collateral shall be limited solely to the categories of expenses listed (and not to the amounts) in the budget attached hereto as **<u>Exhibit A</u>** (the "<u>Cash Collateral Budget</u>"), which shall include, among other things, an itemized list of those Budgeted Expenses (as defined below) identified in the last sentence of this paragraph. Prior to a LSA Depletion, the Debtor's use of Cash Collateral in accordance with the Cash Collateral Budget shall not be subject to variance testing. In the event there is a LSA Depletion during this Chapter 11 Case, use of Cash Collateral shall be limited solely to pay expenses in the amounts and at the times set forth in a revised budget to be agreed-upon by the Debtor and the Trustee in good faith no later than five (5) business days after the LSA Depletion (the "<u>Updated Cash Collateral Budget</u>"); <u>provided</u>, <u>however</u>, that the Debtor shall have authority

9

to use Cash Collateral in excess of, and at times different from, the amounts set forth in the Updated Cash Collateral Budget (the "Budgeted Expenses") to the extent such a variance does not constitute a Termination Event described in paragraph 17(i) of this Final Order. Notwithstanding the foregoing, at all times during this Chapter 11 Case (whether prior to or after a LSA Depletion): (1) no amounts in excess of the applicable line items in the Cash Collateral Budget or Updated Cash Collateral Budget, as applicable, shall be paid by Borrower to any affiliate of Lifespace or SQLC other than amounts payable under Stayton's (x) management agreements (provided, for the avoidance of doubt, that any such management agreements shall be subject to the limitations set forth in section II(H)(4) of the Forbearance Agreement notwithstanding any prior termination of the Forbearance Agreement) or (y) any administration and operational agreements pursuant to which an affiliate of Lifespace or SQLC pays costs incurred on Stayton's behalf to third parties and allocates to, and receives reimbursement of such costs from, Stayton, and (2) other than fees and expenses associated with this Chapter 11 Case and the transactions contemplated in the PSA that are disclosed to, and if applicable approved by, the Bankruptcy Court, Stayton shall incur expenses and pay disbursements only in the ordinary course.

6. Exclusion from Cash Collateral. No party, other than the Debtor, may use the Cash Collateral of the Trustee. The Debtor is not authorized to use and shall not use any Gross Revenues not derived in the ordinary course of the Debtor's operations. Nothing in this Final Order, or in any subsequent order concerning the extension of the use of Cash Collateral, or other order of this Court entitles the Debtor to use any Trustee-Held Funds. The Trustee-Held Funds are held in trust for the Bondholders. In the alternative, the Trustee holds a validly perfected possessory security interest in the Trustee-Held Funds, and is entitled to access the Trustee-Held Funds in accordance with the terms of the Bond Documents. The Trustee is granted relief from

10

the automatic stay pursuant to section 362 of the Bankruptcy Code for the purpose of allowing the Trustee to administer and apply the Trustee-Held Funds in accordance with the Bond Documents, including in the case of the Liquidity Support Account, the LSA. Notwithstanding the foregoing provisions of this paragraph 6, if there is a breach of the PSA by a Directing Holder or the Trustee or the Master Trustee at the direction of the Directing Holders that prevents the consummation of the Plan of Reorganization or causes a termination of the PSA, any remaining amounts in the Liquidity Support Account shall, upon written request by the Lifespace, be returned to Lifespace as set forth in the LSA.

7. <u>Prohibited Use of Cash Collateral</u>. Except as expressly provided in this Final Order, no Cash Collateral or proceeds thereof shall be used for the purpose of: (i) objecting to, or contesting in any manner, or raising any defense to, the validity, amount, extent, perfection, priority, or enforceability of the Bonds, the Prepetition Collateral, the Bond Claim, or any liens or security interests with respect thereto, or any other rights or interests of the Trustee therein or in the Trustee-Held Funds; (ii) asserting any claims or defenses or causes of action arising out of, based upon, or related to, in whole or in part, the Bonds or the Bond Documents, against the Trustee, the Bondholders in their capacity as such, or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, including with respect to payments made pursuant to the Bond Documents; (iii) seeking to modify any of the rights granted to the Trustee hereunder; (iv) seeking to bifurcate any claims of the Trustee; or (vi) pursuing confirmation of a plan of reorganization or liquidation other than the Plan of Reorganization.

8. <u>Amendment or Extension of Budget</u>. The Debtor may, at any time, propose to the Trustee in writing (including by email) an amended Cash Collateral Budget or Updated Cash

Collateral Budget, for the period covered by this Final Order. Any such proposed amendment or modification of the terms and conditions, or any amendment, modification, roll-forward or replacement of the Cash Collateral Budget or the Updated Cash Collateral Budget itself, shall be subject to the prior written consent of the Trustee. At such time as the amended budget becomes the Cash Collateral Budget or the Updated Cash Collateral Budget, the Debtor shall file a copy thereof with this Court and serve it upon all parties entitled to notice in accordance with Bankruptcy Rule 4001(b).

9.    <u>Adequate Protection Payments</u>. In consideration of the Debtor's use of Cash Collateral and the diminution in its Prepetition Collateral on and after the Petition Date, (i) on or before the tenth (10th) day of each month, the Debtor shall pay to the Trustee for deposit to the Bond Fund with respect to the immediately preceding month, amounts representing the lesser of (a) the monthly debt service payment due for such month with respect to the Series 2009 Notes as set forth in the Bond Documents and (b) an amount equal to 75% of any positive Forbearance Net Cash Flow (as defined below) for the preceding month (each, an "<u>Adequate Protection Payment</u>"), <u>provided</u>, <u>however</u>, that such lesser amount shall not exceed the amount of unrestricted cash and investments cash (as calculated in the entry for "Ending Book Balance-Operating" in the Forbearance Budget) of the Debtor on the last day of the preceding month in excess of $5,464,000; and (ii) on November 15, 2019, the amount in the Bond Fund shall be paid by the Trustee to the holders of the Bonds, but no draw shall be made from amounts on deposit in the Reserve Fund. Nothing herein constitutes a waiver of the amounts due with respect to the Series 2009 Notes and amounts due on the Series 2009 Notes and not paid as a result of the deferral in the preceding sentence shall become immediately due and payable upon a Termination Event. For the purposes of this Final Order, "Forbearance Net Cash Flow" shall mean Net Cash Flow, as such term is calculated in the Forbearance Budget, including Net

Entrance Fees, as such term is calculated in the Forbearance Budget. If Net Cash Flow as calculated under the Forbearance Budget is less than or equal to zero for a given month, Forbearance Net Cash Flow for the purposes of this Order shall be equal to zero.

10. Any and all payments or proceeds remitted to the Trustee pursuant to the provisions of this Final Order or otherwise shall be received by the Trustee, free and clear of any claim, charge, assessment or other liability, including, without limitation, any such claim or charge arising out of or based on sections 506(c) and/or 552(b) of the Bankruptcy Code, whether directly or indirectly, all of which are hereby waived by the Debtor.

11. <u>Replacement Lien</u>. Except as otherwise provided in this paragraph 11, as further adequate protection for any diminution in the value of Cash Collateral and other Prepetition Collateral resulting from the Debtor's use thereof after the Petition Date ("<u>Diminution</u>"), and solely to the extent of any Diminution, the Trustee shall have a valid, perfected, and enforceable replacement lien and security interest (the "<u>Replacement Lien</u>") in (i) all assets of the Debtor existing on or after the Petition Date of the same type as the Prepetition Collateral, together with the proceeds, rents, products, and profits thereof, whether acquired or arising before or after the Petition Date, to the same extent, validity, perfection, enforceability, and priority of the liens and security interests of the Trustee as of the Petition Date (the "<u>Postpetition Bond Collateral</u>"); and (ii) all other assets of the Debtor of any kind or nature whatsoever within the meaning of section 541 of the Bankruptcy Code, whether acquired or arising prepetition or postpetition, together with all proceeds, rents, products, and profits thereof (the "<u>Supplemental Collateral</u>"; and, collectively with the Postpetition Bond Collateral, the "<u>Collateral</u>"); <u>provided</u>, <u>however</u>, Supplemental Collateral shall be exclusive of causes of action under Chapter 5 of the Bankruptcy Code and proceeds thereof with the exception of any causes of action pursuant to section 542 of the Bankruptcy Code). The Replacement Lien shall be subject and subordinate to only the Carve

Out (as defined below) and any valid and perfected liens existing on the Petition Date that are senior to Liens of the Trustee against the Prepetition Collateral ("Prior Liens").

12. <u>No Further Action Required</u>. The approval of this Final Order by the Court shall be sufficient and conclusive evidence of the validity, extent, enforceability, and perfection of the Replacement Lien granted to the Trustee, whether or not the Trustee elects to file or record financing statements or any other documents that may otherwise be required under federal or state law in any jurisdiction, or to take such other steps as may otherwise be required to obtain, evidence, or perfect such liens under applicable law; <u>provided</u>, <u>however</u>, that upon the request of the Trustee, the Debtor shall execute such other documents as may be reasonably requested to evidence and perfect such liens; that the Trustee may, in its sole discretion, but shall not be required to, file a certified copy of this Final Order in any filing or recording office in any jurisdiction in which the Debtor has real or personal property; that the Debtor is authorized and directed to execute, or cause to be executed, all such financing statements or other documents upon the Trustee's reasonable request; and that such filing or recording shall be accepted and shall constitute further evidence of perfection of the Trustee's liens and security interests. No obligation, payment, transfer, or grant of security under this Final Order shall be stayed (other than by court order in an appeal from this Final Order), restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any otherwise applicable state law, or subject to any defense, reduction, setoff, recoupment, or counterclaim.

13. <u>Superpriority Claim</u>. As additional adequate protection for any Diminution, the Trustee shall have a superpriority administrative expense claim pursuant to section 507(b) of the Bankruptcy Code with recourse to and payable from any and all assets of the Debtor's estate, including but not limited to rights of the Debtor in, choses in action, or claims of any kind whatsoever, choate or inchoate, present or residual that for any reason cannot be made the subject

14

of the Replacement Lien (the "Superpriority Claim"). The Superpriority Claim shall be subject only to Prior Liens and the Carve Out and shall have priority, pursuant to section 507(b) of the Bankruptcy Code, over any and all administrative expenses, diminution claims, and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kind specified in section 503(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c) (following entry of this Final Order), 507(a), 507(b), 546, 726, 1113, or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtor, any successor trustee, or any creditor in this Chapter 11 Case, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment.

14. _Allowance of Claim._ As set forth in paragraph 26 below, the entry of this Final Order by the Court shall be a conclusive and binding determination on all parties (x) as to the amount and validity of the Bond Claim, and (y) as to the scope, extent, perfection, validity, and enforceability, in all respects, of the Trustee's security interests and liens in the Prepetition Collateral, including, without limitation, the Cash Collateral.

15. _Financial Information._ As further additional adequate protection of the Trustee's security interests in the Cash Collateral and the Prepetition Collateral, the Debtor shall (i) on Wednesday of each week, provide a report indicating all receipts received and disbursements made by the Debtor in the week ending on the prior Friday; (ii) host a weekly call with the Trustee and its professionals, the Directing Holders, and the Borrower's professional advisors, to discuss the weekly expense and disbursement report, the monthly financials of the Borrower, sales and reservations for the prior month, the status of the confirmation of the Plan of Reorganization, the results of operations, and other matters pertaining to the Facility and the

Chapter 11 Case, and any other information reasonably requested by the Trustee; and (iii) allow the Trustee and its professionals and designees reasonable access, during normal business hours and on not less than 48 hours' notice, to the premises of the Debtor in order to conduct appraisals, analyses, and/or audits of the Prepetition Collateral and the Collateral, and shall otherwise reasonably cooperate in providing any other financial information reasonably requested by the Trustee for this purpose. Following LSA Depletion, commencing with the second Wednesday after the LSA Depletion, the Debtor shall provide to the Trustee and the Directing Holders on Wednesday of every other week a report showing the cumulative actual expenses and the cumulative Budgeted Expenses for the four-week period ending the Friday preceding such Wednesday (each, a "Four-Week Testing Period") (except, that for the first such report shall compare the actual expenses and the cumulative Budgeted Expenses for the period between the LSA Depletion and the Friday before the Wednesday the report is delivered), and detailing any variances of more than 12.5% and at least $10,000 from the expenditures and receipts in the Updated Cash Collateral Budget for the corresponding Four-Week Testing Period, which report shall also be discussed on the weekly calls referenced above. The Debtor shall provide to the Trustee such other reports and information as the Trustee may reasonably request from time to time.

16.    Compliance With Bond Documents.    As further adequate protection against Diminution, the Debtor shall comply with those terms and provisions of the Bond Documents set forth on **Exhibit B** attached hereto and incorporated herein. The requirements of this Final Order shall be in addition to, and not in substitution for, the terms and provisions of the Bond Documents set forth on **Exhibit B**; provided, however, in the event of any inconsistency between the Bond Documents and this Final Order, the terms of this Final Order shall control.

EAST\170267621

17. <u>Termination of Use of Cash Collateral With Notice</u>. A Termination Event shall be deemed to have occurred five (5) business days after written notice sent by the Trustee to the Debtor, its counsel, and the United States Trustee of the occurrence of any of the following (a "<u>Termination Event</u>"):

(i) following LSA Depletion, the payment of any expense that would cause aggregate actual expenditures in the Updated Cash Collateral Budget to exceed 112.5% of the total budgeted expenses in the Updated Cash Collateral Budget for a Four-Week Testing Period, <u>provided</u>, <u>however</u>, that entrance fee refunds, if any, shall not be counted against actual expenditures or total budgeted expenses, and, provided further that professional fees and any fees of Seniority, Inc. shall not be subject to any such variance. This foregoing variances shall be measured for each Four-Week Testing Period. Any budgeted expenditures not paid in a particular budget period may be paid during a subsequent period and, for the purpose of calculating the variances set forth above, the Updated Cash Collateral Budget will be revised to move such expenditures to the later period;

(ii) the failure of the Debtor to pay, within ten (10) days of the applicable due date, all undisputed administrative expenses in full in accordance with their terms except for any expenses under sections 503(b)(9) or 546(c) of the Bankruptcy Code;

(iii) the failure of the Debtor to timely pay all fees due under 28 U.S.C. § 1930;

(iv) the failure to timely pay the monthly Adequate Protection Payment; and

(v) the failure of the Debtor to comply with, keep, observe, or perform any of its agreements or undertakings under this Final Order.

Unless prior to the expiration of the five (5) business day period described in this paragraph 17 the Debtor has cured the Termination Event(s) specified in the Trustee's notice, or obtained an order of this Court, on notice to and with the opportunity to be heard by the Trustee, that no such Termination Event has occurred, the authority of the Debtor to use Cash Collateral hereunder shall terminate without further action of any kind (the "<u>Termination Date</u>"), and all amounts owed as set forth in the Bond Claim shall be accelerated and immediately due and

17

payable upon discretion of the Trustee, and the Trustee shall be automatically relieved of any further stay under section 362 of the Bankruptcy Code, or other restriction on enforcement of its prepetition and postpetition liens and security interests in the Collateral to collect amounts due.  Following the occurrence of a Termination Event under this paragraph 17, the Debtor shall schedule a status conference within five business days after the occurrence of such Termination Event to discuss the outstanding issues related to the proceedings with the Court. Notwithstanding the foregoing provision regarding relief from the stay under section 362 of the Bankruptcy Code, the Trustee shall take no action with respect to the enforcement of its prepetition and postpetition liens and security interests in the Collateral or to collect the amounts due from the Debtor until such status conference has been held.

18.     <u>Termination of Use of Cash Collateral Without Prior Notice</u>. The Debtor's authority to use Cash Collateral hereunder shall terminate without any further action by this Court, and a Termination Event shall occur without prior notice, upon the occurrence of any of the following (also a "<u>Termination Event</u>"):

(i)     Occurrence of the effective date of the Plan of Reorganization;

(ii)    the Chapter 11 Case is dismissed or converted to a case under Chapter 7 of the Bankruptcy Code;

(iii)   the earlier of (y) the date of the entry of an order of this Court appointing a Chapter 11 trustee or an examiner with enlarged powers (beyond those set forth in sections 1104(c) and 1106(a)(3) and (4) of the Bankruptcy Code) for the Debtor; or (z) the date the Debtor files a motion, application, or other pleading consenting to or acquiescing in any such appointment;

(iv)    the Debtor files or supports confirmation of, or fails to actively oppose confirmation of, a plan of reorganization that is inconsistent with the Plan of Reorganization or that would result in the modification or amendment of the Plan of Reorganization in a way that materially adversely affects the Trustee;

EAST/170267621

(v)     the Debtor fails to take all reasonable necessary steps in seeking to obtain from the Bankruptcy Court an order confirming the Plan of Reorganization by December 20, 2019;

(vi)    the Debtor fails to take all reasonable steps so that the effective date of the Plan of Reorganization occurs not later than February 29, 2020;

(vii)   termination of the PSA;

(viii)  an order is entered in the Chapter 11 Case over the objection of the Trustee approving financing pursuant to section 364 of the Bankruptcy Code that would grant an additional security interest or a lien on any Collateral or granting a superpriority administrative claim that is equal or superior to the superpriority administrative claim granted to the Trustee under this Final Cash Collateral Order; and

(ix)    an adversary proceeding or contested matter is commenced or joined by the Debtor challenging the amount, validity, enforceability, priority, or extent of the Trustee's liens, security interests, or claims.

Upon the occurrence of a Termination Event described in this paragraph 18, the Debtor's authority to use Cash Collateral hereunder shall automatically terminate (also a "Termination Date"), and all amounts owed as set forth in the Bond Claim shall be accelerated and immediately due and payable upon discretion of the Trustee, the Trustee shall be permitted to exercise all available remedies without further notice or court order, and the Trustee shall be automatically relieved of any further stay under section 362 of the Bankruptcy Code, or other restriction on enforcement of its prepetition and postpetition liens and security interests in the Collateral to collect the amounts due. Following the occurrence of a Termination Event under this paragraph 18, the Debtor shall schedule a status conference within five business days after the occurrence of such Termination Event to discuss the outstanding issues related to the proceedings with the Court. Notwithstanding the foregoing provision regarding relief from the stay under section 362 of the Bankruptcy Code, the Trustee shall take no action with respect to the enforcement of its prepetition and postpetition liens and security interests in the Collateral or to collect the amounts due from the Debtor until such status conference has been held.

19.     <u>Claims and Causes of Action</u>.  On behalf of itself and, subject to paragraph 26 of this Final Order, the estate, the Debtor reaffirms, and hereby waives, releases, and discharges the Trustee, all Bondholders in their capacity as such, and their respective affiliates, agents, attorneys, professionals, officers, directors, and employees (collectively, the "<u>Released Parties</u>"), from any and all claims and causes of action arising out of, based upon, or related to, in whole or in part, the Bonds and the Bond Documents; any aspect of the prepetition relationship between the Trustee and/or the Bondholders, and the Debtor; and any other acts or omissions by the Trustee and/or the Bondholders in connection with either the Bond Documents or the Trustee's and/or Bondholders' prepetition relationship with the Debtor.  Further, the Debtor reaffirms its waiver and hereby waives any and all rights to object to or contest the amount of the Bond Claim or the Trustee's security interest in the Prepetition Collateral and agrees not to challenge that all such claims and security interests have been duly perfected and are in all respects valid and enforceable first priority security interests and liens.

20.     <u>Failure of Adequate Protection</u>.  Nothing herein shall constitute a waiver, release or modification of the rights of the Trustee to assert a claim under sections 364(c) and 507(b) of the Bankruptcy Code.

21.     <u>Deemed Request for Stay Relief</u>.  This Final Order shall be deemed to constitute a request as of the Petition Date by the Trustee for relief from the automatic stay with respect to the Prepetition Collateral for purposes of any request for adequate protection granted hereunder.

22.     <u>No Charge on Collateral; Carve Out</u>.  In partial consideration of the Debtor's continuing acknowledgement of the debt due and owing and the waiver of any claims under section 506(c) (following entry of the Final Order) and section 552(b) of the Bankruptcy Code, the Trustee consents to certain expenses and professional fees incurred during the pendency of this Chapter 11 Case that shall be superior in all instances to the liens and claims of the Trustee

20

and all other parties (the "Carve Out"). For purposes hereof, the "Carve Out" means (a) the statutory fees of the United States Trustee pursuant to 28 U.S.C. § 1930 and the fees of the Clerk of this Court; and (b) for professionals retained by the Debtor or its estate and any statutory committee appointed in the Chapter 11 Case pursuant to section 1103 of the Bankruptcy Code, the fees and expenses of such professionals solely to the extent such fees and expenses (i) have actually been incurred by the corresponding professional between the Petition Date and the Termination Date, and (ii) have been allowed by the Court; provided, however, the amount of the "Carve Out" in (b) above shall be subject to a cap in the amount of $75,000 per week (with such amounts to be treated on a pro-rated basis for any partial weeks) for the period between the Petition Date and a Termination Date, minus the aggregate of (x) the amount of any retainer, deposit, or other identified funds that is available to pay such fees and expenses (including any amounts paid into any professional fee escrow), and (y) any additional amounts actually paid to such professionals (solely to the extent such payments are in addition to amounts included in the foregoing subsection (x)). The Debtor is authorized to use Cash Collateral to pay the fees, costs and expenses that constitute the Carve-Out, as the same may be due and payable, either during the period this Final Order remains in effect or thereafter, provided that no portion of the Prepetition Collateral or the Cash Collateral may be used by the Debtor, any committee or any of their professionals or any other person or entity to commence or prosecute (as opposed to analyze and investigate) any action, contest, challenge or objection with respect to the Trustee, the Bonds, the Bond Documents, or the Prepetition Collateral. Nothing herein shall constitute a waiver of any right of the Trustee to object to fees and expenses of any professionals or to challenge any assertion that any amount of the fees and expenses are not unpaid. The entry of this Final Order shall continue to be a conclusive and binding determination on all parties that, except for the Carve Out, no costs or expenses of administration shall be imposed against the

Trustee or the Prepetition Collateral or the Collateral under sections 105, 506(c) (following entry of the Final Order) or 552(b) of the Bankruptcy Code, or otherwise.

23. <u>Escrowed Entrance Fees</u>. To the extent the Debtor is holding entrance fees received following the Petition Date (the "<u>Entrance Fees</u>") in an escrow account pursuant to that *Order (I) Authorizing the Debtor to (A) Escrow Postpetition Entrance Fees in its Existing Entrance Fee Escrow Account and (B) Refund Postpetition Entrance Fees Under Certain Circumstances During the Chapter 11 Case; and (II) Granting Related Relief* [Docket No. 50] (the "<u>Escrow Order</u>"), such Entrance Fees shall not be subject to the liens of the Trustee until all conditions under that escrow are satisfied and the Debtor is authorized to release the funds from escrow pursuant to the Escrow Order or other order of the Court, at which time the Trustee's liens will attach to the Debtor's right to receive any Entrance Fees released from the escrow account. The Debtor is authorized to make refund payments in accordance with the Escrow Order. For the avoidance of doubt, any entrance fees paid into an escrow account ("<u>Pre-Petition Escrow</u>") during the period after May 10, 2019 and prior to the Petition Date ("<u>Pre-Petition Entrance Fees</u>") shall not be deemed property of the Debtor's estate or subject to the liens or priority claims of the Trustee until all conditions under the applicable Pre-Petition Escrow are satisfied or the Debtor is authorized to release the funds from escrow pursuant to the an order of the Court, at which time the Trustee's liens will attach to the Debtor's right to receive any Pre-Petition Entrance Fees released from such Pre-Petition Escrow.

24. <u>Modification of Stay</u>. The automatic stay imposed by section 362 of the Bankruptcy Code is hereby vacated and modified insofar as necessary to permit the Trustee to: (i) receive any payments or distributions made by the Debtor to the Trustee for and on behalf of the Bondholders, (ii) apply, allocate, or make payments from any of the funds or accounts maintained by the Trustee (including, without limitation, the Trustee-Held Funds) in

22

accordance with the terms of the Bond Documents, and (iii) take any action authorized by this Final Order.

25. <u>Preservation of Rights</u>. If any or all of the provisions of this Final Order are, at any time, modified, vacated or stayed, such stay, modification, or vacation shall not affect the validity, extent, priority, and enforceability of any lien, priority, or other benefit conferred under this Final Order prior to such stay, modification, or vacation.

26. <u>Binding Effect</u>. This Final Order shall be binding on all creditors and parties in interest in this Chapter 11 Case, including, but not limited to, the Debtor and any successors thereto, any Chapter 11 or Chapter 7 trustee that is appointed or elected in this Chapter 11 Case <u>provided</u>, <u>however</u>, that this Final Order is without prejudice to the rights of an official committee of unsecured creditors (a "<u>Committee</u>") to, on behalf of the Debtor's estate, challenge the validity, amount, perfection, priority, extent or enforceability of the Bond Claim or the pre-petition security interests of the Trustee (a "<u>Committee Challenge</u>"), so long as any such challenge is made on or before the date that is the earlier of (i) five (5) business days prior to the date that the Court sets as the deadline for any objections to the Plan of Reorganization, or (ii) December 5, 2019, after which time all such challenges shall be deemed finally and conclusively barred; <u>provided further</u> that if one or more claims are timely made under this paragraph 26 and properly filed, then except for such claims, all potential claims and causes of actions are hereby deemed forever waived and relinquished.

27. <u>No Competing Liens</u>. Except as set forth herein, the Debtor shall not grant liens on, or security interests in, the Prepetition Collateral or the Collateral to any other party, pursuant to section 364 of the Bankruptcy Code or otherwise, without the consent of the Trustee.

28. <u>Reservation of Rights</u>. Except as provided in this Final Order or as otherwise provided in the PSA, neither the Debtor nor the Trustee waives any of its rights under the

Bankruptcy Code, any applicable law, or the Bond Documents, including, without limitation, the right of the Debtor or the Trustee at any time to seek any relief (or to oppose any such relief) under the Bankruptcy Code, or the right of the Debtor or the Trustee to exercise any of its rights and remedies under the Bankruptcy Code at any time.

29.    <u>Further Relief</u>.  Subject to the terms of the PSA, nothing herein shall (i) preclude the Trustee from seeking any other relief that it may deem appropriate, including relief from the automatic stay; or (ii) prevent the Trustee from asserting at some later time that its liens and security interests in the Prepetition Collateral are not being adequately protected.

30.    <u>No Third Party Beneficiaries</u>.  Except as expressly provided herein, no rights are created hereunder for the benefit of any third party, any creditor, or any direct, indirect or incidental beneficiary except for the Bondholders, as set forth herein.

31.    <u>Effectiveness</u>.  The rights and obligations of the parties under this Final Order shall be effective and enforceable as of the date of the Petition Date, and, for the avoidance of doubt, Bankruptcy Rule 6004(h) shall not apply hereto.  If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur, or stay shall not affect (i) the validity, extent, priority, or enforceability of any obligations incurred prior to the actual receipt of written notice by the Trustee of the effective date of such reversal, modification, vacatur, or stay, or (ii) the validity, extent, or enforceability of the liens and claims granted hereunder.

32.    <u>Notices</u>.  All notices, requests, demands, waivers, and other communications required or permitted to be given under this Final Order shall be in writing and shall be deemed to have been duly given if (a) delivered personally, or (b) sent by email with a next-day or overnight mail or delivery:

24

(a)     If to the Debtor to:

>       Ankura Consulting Group, LLC
>       Attn: Louis E. Robichaux IV
>       15950 Dallas Parkway, Suite 750
>       Dallas, TX 75248
>       Telephone: (214) 200-3689
>       E-mail: Louis.robichaux@ankura.com
>
>       with a copy sent contemporaneously by email to:
>
>       DLA Piper LLP (US)
>       Attn: Thomas R. Califano, Esq.
>       1251 Avenue of the Americas
>       New York, NY 10020-1104
>       Telephone: (212) 335-4500
>       E-mail: thomas.califano@dlapiper.com

(b)     If to the Trustee to:

>       UMB Bank, N.A.
>       Attn: Virginia A. Housum
>       Senior Vice President
>       120 Sixth Street South, Suite 1400
>       Minneapolis, MN 55403
>       E-mail: Virginia.housum@umb.com
>
>       with a copy sent contemporaneously by email to:
>
>       Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
>       Attn: Daniel S. Bleck, Esq.
>       One Financial Center
>       Boston, MA 02111
>       Telephone: (617) 348-4498
>       E-mail: dsbleck@mintz.com

### ###END OF ORDER###

Order submitted by:

**DLA PIPER LLP (US)**

By: _/s/ Andrew B. Zollinger_
Andrew B. Zollinger, State Bar No. 24063944
DLA Piper LLP (US)
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 743-4500
Facsimile: (214) 743-4545
E-mail: andrew.zollinger@dlapiper.com

EAST/170267621

- and -

Thomas R. Califano (admitted *pro hac vice*)
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
E-mail: thomas.califano@dlapiper.com

- and -

Rachel Nanes (admitted *pro hac vice*)
DLA Piper LLP (US)
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131
Telephone: (305) 423-8563
Facsimile: (305) 675-8206
E-mail: rachel.nanes@dlapiper.com

*Proposed Counsel for the Debtor*

EAST/170267621

## EXHIBIT A

**Cash Collateral Budget**

Confidential
FRE 408 Settlement Material
Draft - Subject to Material Change

TARRANT COUNTY SENIOR LIVING CENTER, INC. - THE STAYTON AT MUSEUM WAY
A DRAFT Weekly Cash Flow Projection
Report Date: May 8, 2019

$ in Thousands

**Occupancy**
I) Beginning Balance
II) Move-Ins
III) Move-Outs / Transfers
IL (Census) (Occupancy)
AL (Census) (Occupancy)
SNF (Census) (Occupancy)

**Cash Flow Summary**
Operating Cash Receipts
Resident Receipts
Medicare Receipts
Other Receipts & Pool Impact
Total Operating Receipts

Operating Cash Disbursements
Payroll, Payroll Taxes, & Benefits
Dining Services
Administrative & Marketing
Buildings, Grounds, & Utilities
Ancillary & Therapy Services
Other Disbursements
Total Operating Disbursements

NCFO Before Cap Ex / Mgmt Fees / Elf / Debt Service
Routine Capital Expenditures
Net Cash From Operations After Cap Ex

Management & Admin. Fees
Management Fees
NCFO After Cap Ex / Mgmt Fees

Entrance Fees
Cash Transfer from Escrow to Pay Refund Obligation
Entrance Fee Refund Obligation Payment
Net Cash From Escrow Account
NCFO After Cap Ex / Mgmt Fees / Entrance Fees

Restructuring Costs
Legal Counsel - OMM
Financial Advisor - Ankura
Chief Restructuring Officer
Accounting Advisor - Larx
Indenture Trustee Fees
Claims Agent
Ombudsman
Board Counsel & Issuer Fees
Chapter 11 Filing Fee
US Trustee Fee
Cash Settlement
Adequate Assurance Deposit
Restructuring Costs
Total NCFO

**Cash Flow Reconciliation (Equals Roll Forwards (Book Basis)**
Beginning Book Balance - Operating
NCFO Before Cap Ex / Mgmt Fees / Elf / Debt Service
Routine Capital Expenditure
Management & Admin Fees
Net Cash Flow from Escrow Account
Debt Service Disbursements
Restructuring Costs
Account Transfers
Ending Book Balance - Operating
Days Cash on Hand - Operating Cash

Confidential
FRE 408 Settlement Material
Draft – Subject to Material Change

TARRANT COUNTY SENIOR LIVING CENTER, INC. – THE STANTON
A DRAFT Weekly Cash Flow Projection
Report Date: May 8, 2019

$ in Thousands

**Occupancy**
- Beginning Balance
- IL Move-ins
- IL Move-outs / Transfers
- IL Census (Occupancy)
- AL Census (Occupancy)
- SNF Census (Occupancy)

**Cash Flow Summary**
Operating Cash Receipts
- Resident Receipts
- Medicaid Receipts
- Other Receipts & Float Impact
- Total Operating Receipts

Operating Cash Disbursements
- Payroll, Payroll Taxes, & Benefits
- Dietary Services
- Administration & Marketing
- Buildings, Grounds, & Utilities
- Ancillary & Therapy Services
- Other Disbursements
- Total Operating Disbursements

NOTD Before Cap Ex / Mgmt Fees / EI / Debt Service

Routine Capital Expenditures
Net Cash From Operations After Cap Ex

**Management & Admin Fees**
- Management Fee
NOTD After Cap Ex / Mgmt Fees

**Entrance Fees**
- Cash from Entrance Escrow to Pay Refund Obligation
- Entrance Fee Refund Obligation Payment
- Net Cash to/from Escrow Account

NOTD After Cap Ex / Mgmt Fees / Entrance Fees

**Restructuring Costs**
- Legal Counsel – Debtor
- Financial Advisor – Debtor
- Chief Restructuring Officer
- Accounting Advisor – Lara
- Representative of Board Member
- Claims Agent
- Ombudsman
- Bond Counsel & Issuer Fees
- Chapter 11 Filing Fee
- US Trustee Fee
- Cash Settlement
- Retained Professional Deposit
- Restructuring Costs
Net Restructuring Costs

**Cash Flow Reconciliation / Liquidity Roll Forward (Book Book)**
- Beginning Book Balance – Operating
- NOTD After Cap Ex / Mgmt Fees / EI / Debt Service
- Routine Capital Expenditure
- Net Entrance Fees to/from Escrow Account
- Net Cash Flow from Escrow Account
- Debt Service Disbursements
- Restructuring Costs
- Ending Book Balance – Operating

Days Cash on Hand – Operating Cash

2019 05 08 – Stanton Weekly Cash Flow Projection (DRAFT)