

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

**Signed December 4, 2019**

_____
United States Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | CHAPTER 11 |
| **TARRANT COUNTY SENIOR LIVING** | § | |
| **CENTER, INC.**[1] | § | CASE NO. 19-33756 (SGJ) |
| | § | |
| Debtor. | § | |

**AGREED ORDER AUTHORIZING THE DEBTOR TO SELF-REPORT
*IN LIEU* OF THE COURT'S APPOINTMENT OF A
PATIENT CARE OMBUDSMAN UNDER 11 U.S.C. § 333**

Upon the (i) *Order to Show Cause Regarding the Appointment of a Patient Care Ombudsman Pursuant to 11 U.S.C. § 333* [Docket No. 43] (the "PCO Order") and (ii) *Debtor's Response to Order to Show Cause Regarding the Appointment of a Patient Care Ombudsman Pursuant to 11 U.S.C. § 333* [Docket No. 69] (the "Response"),[2] pursuant to which the Debtor seeks a determination that the appointment of a patient care ombudsman ("PCO") under section 333 of title 11 of the United States Code (the "Bankruptcy Code") is unnecessary due to the timing

---

[1] The last four digits of the Debtor's federal tax identification number are 8602.

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Response.

EAST\170532035.1

and circumstances of this chapter 11 case (the "Chapter 11 Case") and the Debtor's willingness to self-report *in lieu* of the Court's appointment of a PCO, all as further described in the Response; and upon consideration of the First Day Declaration and the evidence presented at the hearing on the PCO Order scheduled on November 26, 2019 (the "Hearing"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding under 28 U.S.C. § 157(b)(2); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtor's notice of the Response and opportunity for a hearing were adequate and appropriate under the circumstances; and this Court having reviewed the Response; and this Court having determined that the legal and factual bases set forth in the Response and at the Hearing establish just cause for the relief granted herein; and this Court having found and determined that the relief sought in the Response is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1. Pursuant to section 333 of the Bankruptcy Code, and subject to the terms and conditions of this Order, the appointment of a PCO is deemed unnecessary for the protection of the Debtor's patients.

2. Beginning on the date that is ten (10) business days following entry of this Order, and every twenty (20) days thereafter, until the effective date of the Plan, or as otherwise may be ordered by the Court, the Debtor shall file with the Court a verified affidavit reporting the following information (the "Affidavit"):

    a.    **Staff Members:** Report the number of the Debtor's "Staff Members", their positions, the status or standing of any licenses held by Staff Members, and any written complaints made by patients, residents, or families of patients or residents concerning the "Care Provided" by the Staff Members at the Facility. The term "Staff Members" includes: (i) W-2 employees or independent contractors, who are directly contracted with or by the Debtor, and (ii) individuals who, at the request of the Debtor, whether or not directly contracted with, provide any form of care to the patients or residents at the Facility. The term "Care Provided" includes, but is not limited to: (i) services of medical personnel, whether licensed or unlicensed, who provide care to residents or patients in (a) the skilled nursing section of the Facility, (b) the assisted living section of the Facility, and (c) the independent living section of the Facility; (ii) use of physicians, medical specialists, or other medical practitioners whose practices are based, in whole or in part, within the Facility, or who at the request of the Debtor or its employees treat patients or residents on a regular and recurring basis; (iii) use of medical clinics, rehabilitation or therapy rooms and related medical equipment by patients or residents; and (iv) the providing of pharmaceutical services or supplies to residents or patients.

    b.    **Staffing Changes:** Report any increase or decrease in the number of Staff Members over the twenty-day reporting period, and the reasons or justifications for such increase or decrease.

    c.    **Patient/Resident Records:** Report the measures taken by the Debtor to continue to secure the patient and resident records at the Facility.

    d.    **Vendors:** Report all written complaints, if any, raised by vendors of the Debtor regarding payment or ordering issues.

    e.    **Complaints:** Report all written complaints, if any, made by patients, residents, the families of patients or residents, or referring physicians (including written complaints made by physicians, medical specialists, dentists, or other medical practitioners whose practices are based, in whole or in part at the Facility or who at the request of the Debtor treat patients or residents on a regular and recurring basis) regarding patient care and/or other services rendered by the Debtor.

    f.    **Litigation:** Report any post-petition litigation or administrative actions exempt from the automatic stay under 11 U.S.C. § 362(b)(4) initiated post-petition against the Debtor, and the status of any pending administrative actions against the Debtor.

    g.    **Expansion/Closures:** Report any plans to open or close a portion of the Facility.

      h.      **Facility Condition**: Report any major maintenance work that needs to be done to or that has been done to the Facility. This can include, but is not otherwise limited to, structural concerns such as roofing, electrical, plumbing, and flooding issues.

      i.      **Life-Safety Issues:** Affirmatively report that there are no Life-Safety Issues at the Facility where patients and residents live and are treated or otherwise receive care. "Life-Safety Issues" include the ability of the Debtor's medical personnel to respond in a timely manner, using Staff Members on premises, to emergency situations whether by phone or emergency pull cord.

3. The Debtor shall mail (by overnight U.S. first-class mail), e-mail, or fax a copy of the Affidavits to: (i) the U.S. Trustee; (ii) the Regulatory Authorities; and (iii) any family member, resident, or patient who specifically requests a copy thereof (collectively, the "Notice Parties").

4. Notwithstanding the deadlines set forth in paragraph 2 herein, the Debtor shall immediately file with the Court and serve upon the Notice Parties an affidavit describing the occurrence of any of the following events:

      a.      Death of any resident (for any reason);

      b.      Termination or separation of employment of any physician, nurse, or manager tasked with overseeing patient care (for any reason);

      c.      Any written complaints filed regarding patient care; and

      d.      Life-Safety Issues.

5. Within two (2) business days of entry of this Order, the Debtor shall provide a copy of this Order together with the "Notice of Rights and Services" attached hereto as **Exhibit A** directly to all residents and file a certificate of service that all residents have received a copy of this Order.

6. This Order is without prejudice to a party in interest later moving for the appointment of a PCO.

7. Notwithstanding anything in the Bankruptcy Rules to the contrary, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

8. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

### END OF ORDER ###

Order submitted by:

**DLA PIPER LLP (US)**

By: /s/ Andrew B. Zollinger
Andrew B. Zollinger, State Bar No. 24063944
DLA Piper LLP (US)
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 743-4500
Facsimile: (214) 743-4545
E-mail: andrew.zollinger@dlapiper.com

- and -

Thomas R. Califano (admitted *pro hac vice*)
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
E-mail: thomas.califano@dlapiper.com

- and –

Rachel Nanes (admitted *pro hac vice*)
DLA Piper LLP (US)
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131
Telephone: (305) 423-8563
Facsimile: (305) 675-8206
E-mail: rachel.nanes@dlapiper.com

*Proposed Counsel for the Debtor*

# **EXHIBIT A**

**Notice of Rights and Services**



# RIGHTS OF HEALTH CARE RESIDENTS

**The elderly (60 years of age and older) have all the rights, benefits, responsibilities, and privileges granted by the constitution and laws of this state and the United States. They have the right to be free of interference, coercion, discrimination, reprisal in exercising these civil rights.
By law, every Texas nursing facility resident has the right...**

**To be treated with dignity, respect, courtesy and consideration** without regard to race, religion, national origin, sex, age, disability, marital status or source of payment.

- To make their own choices regarding personal affairs, care, benefits and services;
- To be free from abuse, neglect and exploitation;
- To designate a guardian or representative to ensure the right to quality stewardship of their affairs, if protective measures are required; and
- To live in safe, decent and clean conditions.

**To receive all care necessary** to have the highest possible level of health.
**To be free from physical or chemical restraints** used for discipline or convenience and not required for medical symptoms.
**To communicate** in their native language with other individuals or employees for the purpose of acquiring or receiving any type of treatment, care or services.
**To complain** about care or treatment and receive prompt response to resolve the complaint without fear of reprisal or discrimination by the person providing services; to organize or participate in any program that presents residents' concerns to the facility administrator.
**To receive** visitors.
**To privacy** during visits and telephone calls and while attending to personal needs, unless providing privacy would infringe on the rights of others.
**To participate in activities** of social, religious or community groups, inside or outside of a care setting, unless the participation interferes with the rights of other persons.
**To send and receive** unopened mail and to receive assistance in reading or writing correspondence.
**To manage** their own personal financial affairs in the least restrictive method by:

- Written authorization for another person to manage or provide accounting of money and property;
- Choosing another manner, including a representative payee program, a money management program, a financial power of attorney, a trust, or a similar method.

**To access and to have** an accounting of their money and property deposited with the facility and of all financial transactions made with or on behalf of them.
**To access personal and clinical records** which will be maintained as confidential and may not be released without their consent, except to a person providing services at the time they are transferred or as required by another law.
**To be fully informed about their total medical condition**, in a language that they can understand, and to be notified whenever there is a significant change in their medical condition, by the person providing services.
**To retain** the services of a physician of their choice, at their own expense or through an insurance plan, and to be fully informed in advance about treatment or care that may affect their well-being.
**To participate in developing a plan of care** that describes their medical, psychological and nursing needs and

how the needs will be met, including reasonably expected effects, side effects and risks associated with psychoactive medications.

**To refuse medical treatment and to refuse to participate in experimental research** after being advised by the person providing services of possible consequences; and acknowledging that they clearly understand the consequences.

**To receive information** about prescribed psychoactive medication from the person who prescribes the medication or that person's designee, **to have** any psychoactive medications prescribed and administered in a responsible way, as mandated by the HSC 242. 505, and **to refuse** to consent to the prescription of psychoactive medications;

**To place in their room an electronic monitoring device** that is owned and operated by the resident or provided by the guardian or legal representative.

**To receive** a written statement or admission agreement describing the services provided by the facility and the related charges.

**To be informed**, not later than the 30th day after admission, by a person providing services, of entitlement to benefits under Medicare or Medicaid and items and services covered by these benefits, including those for which they may not be charged.

**To discharge** themselves from the facility unless they have been adjudicated mentally incompetent.

**To not be transferred or discharged** by a person providing services unless: Transfer is for their welfare and their needs cannot be met by the person providing services;

- Their health has improved sufficiently so that services are no longer needed;
- Their health and safety or the health and safety of another individual would be endangered if the transfer or discharge was not made;
- The service provider ceases to operate or to participate in the program which pays for their treatment or care; or
- They fail, after reasonable and appropriate notices, to pay for services.

**To not be transferred or discharged**, except in an emergency, until the 30th day after the date of written notice to the individual, legal representative or a family member stating:

- Intent to transfer or discharge;
- Reason for the transfer or discharge;
- Effective date of transfer or discharge;
- If transferred, the location to which they will be transferred; and
- The right to appeal the action to the Texas Department of Aging and Disability Services if it is a Medicaid-certified facility and the person to whom the appeal should be directed.

**To not be relocated** within the facility except in accordance with nursing facility regulations.

**To keep and use personal possessions**, including clothing and furnishings, as space permits, secure from theft or loss. The number of personal possessions may be limited for the health and safety of other individuals.

**To wear** their own clothes.

**To refuse to perform services** for the person or facility providing services.

**To use advance directives to:**

- Make a living will by executing a directive under the Texas Advance Directives Act;
- Execute a medical power of attorney; or
- Designate a guardian in advance of need to make decisions regarding their health care should incapacity occur.

**To receive** a copy of the Statement of Resident Rights and responsibilities before receiving services or as soon as possible after receiving services and to be informed of changes or revisions by the person providing services. The provider must post the Statement in a conspicuous location.

Their rights may be restricted only to the extent necessary to protect them or another person from danger or harm or to protect a right of another resident, particularly those relating to privacy and confidentiality. *These described rights are cumulative of other rights or remedies to which an elderly individual may be entitled under law.*

# RESIDENT'S BILL OF RIGHTS

1. Each assisted living facility must post the resident's bill of rights, as provided by the department, in a prominent place in the facility and written in the primary language of each resident. A copy of the Resident's Bill of Rights must be given to each resident.

2. A resident has all the rights, benefits, responsibilities, and privileges granted by the constitution and laws of this state and the United States, except where lawfully restricted. The resident has the right to be free of interference, coercion, discrimination, and reprisal in exercising these civil rights.

3. Each resident in the assisted living facility has the right to:

   a. be free from physical and mental abuse, including corporal punishment or physical and chemical restraints that are administered for the purpose of discipline or convenience and not required to treat the resident's medical symptoms. A provider may use physical or chemical restraints only if the use is authorized in writing by a physician or the use is necessary in an emergency to protect the resident or others from injury. A physician's written authorization for the use of restraints must specify the circumstances under which the restraints may be used and the duration for which the restraints may be used. Except in an emergency, restraints may only be administered by qualified medical personnel;

   b. participate in activities of social, religious, or community groups unless the participation interferes with the rights of others;

   c. practice the religion of the resident's choice;

   d. if mentally retarded, with a court-appointed guardian of the person, participate in a behavior modification program involving use of restraints, consistent with subparagraph (A) of this paragraph, or adverse stimuli only with the informed consent of the guardian;

   e. be treated with respect, consideration, and recognition of his or her dignity and individuality, without regard to race, religion, national origin, sex, age, disability, marital status, or source of payment. This means that the resident:
      i. has the right to make his/her own choices regarding personal affairs, care, benefits, and services;
      ii. has the right to be free from abuse, neglect, and exploitation; and
      iii. if protective measures are required, has the right to designate a guardian or representative to ensure the right to quality stewardship of his/her affairs;

   f. a safe and decent living environment;
   g. not be prohibited from communicating in his or her native language with other residents or employees for the purpose of acquiring or providing any type of treatment, care, or services;

 h. complain about the resident's care or treatment. The complaint may be made anonymously or communicated by a person designated by the resident. The provider must promptly respond to resolve the complaint. The provider must not discriminate or take other punitive action against a resident who makes a complaint;

 i. receive and send unopened mail, and the provider must ensure that the resident's mail is sent and delivered promptly;

 j. unrestricted communication, including personal visitation with any person of the resident's choice, including family members and representatives of advocacy groups and community service organizations, at any reasonable hour;

 k. make contacts with the community and to achieve the highest level of independence, autonomy, and interaction with the community of which the resident is capable;

 l. manage his or her financial affairs. The resident may authorize in writing another person to manage his/her money. The resident may choose the manner in which his/her money is managed, including a money management program, a representative payee program, a financial power of attorney, a trust, or a similar method, and the resident may choose the least restrictive of these methods. The resident must be given, upon request of the resident or the resident's representative, but at least quarterly, an accounting of financial transactions made on his or her behalf by the facility should the facility accept his or her written delegation of this responsibility to the facility in conformance with state law;

 m. access the resident's records, which are confidential and may not be released without the resident's consent, except

   i. to another provider, if the resident transfers residence; or
   ii. if the release is required by another law;

 n. choose and retain a personal physician and to be fully informed in advance about treatment or care that may affect the resident's well-being;

 o. participate in developing his/her individual service plan that describes the resident's medical, nursing, and psychological needs and how the needs will be met;

 p. be given the opportunity to refuse medical treatment or services after the resident:
   i. is advised by the person providing services of the possible consequences of refusing treatment or services; and
   ii. acknowledges that he/she understands the consequences of refusing treatment or services;

q. unaccompanied access to a telephone at a reasonable hour or in case of an emergency or personal crisis;

r. privacy, while attending to personal needs and a private place for receiving visitors or associating with other residents, unless providing privacy would infringe on the rights of other residents. This right applies to medical treatment, written communications, telephone conversations, meeting with family, and access to resident councils. If a resident is married and the spouse is receiving similar services, the couple may share a room;

s. retain and use personal possessions, including clothing and furnishings, as space permits. The number of personal possessions may be limited for the health and safety of other residents;

t. determine his or her dress, hair style, or other personal effects according to individual preference, except the resident has the responsibility to maintain personal hygiene;

u. retain and use personal property in his or her immediate living quarters and to have an individual locked area (cabinet, closet, drawer, footlocker, etc.) in which to keep personal property;

v. refuse to perform services for the facility, except as contracted for by the resident and operator;

w. be informed by the provider no later than the 30th day after admission:
   i. whether the resident is entitled to benefits under Medicare or Medicaid; and
   ii. which items and services are covered by these benefits, including items or services for which the resident may not be charged;

x. not be transferred or discharged unless:
   i. the transfer is for the resident's welfare, and the resident's needs cannot be met by the facility;
   ii. the resident's health is improved sufficiently so that services are no longer needed;
   iii. the resident's health and safety or the health and safety of another resident would be endangered if the transfer or discharge was not made;
   iv. the provider ceases to operate or to participate in the program that reimburses for the resident's treatment or care; or
   v. the resident fails, after reasonable and appropriate notice, to pay for services;

y. not be transferred or discharged, except in an emergency, until the 30th day after the date the facility provides written notice to the resident, the resident's legal representative, or a member of the resident's family, stating:
   i. that the facility intends to transfer or discharge the resident;
   ii. the reason for the transfer or discharge;

      iii. the effective date of the transfer or discharge;
      iv. if the resident is to be transferred, the location to which the resident will be transferred; and
      v. any appeal rights available to the resident;

z. leave the facility temporarily or permanently, subject to contractual or financial obligations;

aa. have access to the service of a representative of the State Long Term Care Ombudsman Program, Texas Department on Aging; and

bb. execute an advance directive, under the Natural Death Act (Chapter 166, Health and Safety Code) or designate a guardian in advance of need to make decisions regarding the resident's health care should the resident become incapacitated.