Andrew B. Zollinger, State Bar No. 24048744
DLA Piper LLP (US)
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
Tel:  (214) 743-4500
Fax:  (214) 743-4545
E-mail:  andrew.zollinger@dlapiper.com

Thomas R. Califano (*pro hac vice* pending)
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Tel:  (212) 335-4500
Fax:  (212) 335-4501
E-mail:  thomas.califano@dlapiper.com

PROPOSED COUNSEL FOR THE DEBTOR

Rachel Nanes (*pro hac vice* pending)
DLA Piper LLP (US)
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131
Tel:  (305) 423-8563
Fax:  (305) 675-8206
E-mail:  rachel.nanes@dlapiper.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **CHAPTER 11** |
| **TARRANT COUNTY SENIOR LIVING** | § | |
| **CENTER, INC.**[1] | § | **CASE NO. 19-33756 (SGJ)** |
| | § | |
| Debtor. | | |

## DEBTOR'S FIRST AMENDED PREPACKAGED PLAN OF REORGANIZATION
## PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

THIS CHAPTER 11 PLAN OF REORGANIZATION IS BEING SOLICITED FOR ACCEPTANCE OR REJECTION IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND WITHIN THE MEANING OF SECTION 1126 OF THE BANKRUPTCY CODE.  THIS CHAPTER 11 PLAN WILL BE SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL FOLLOWING SOLICITATION AND THE DEBTOR'S FILING OF A CHAPTER 11 CASE.

Dated:  December 17, 2019

---

[1]  The last four digits of the Debtor's federal tax identification number are 8602.

## TABLE OF CONTENTS

**SECTION 1.        DEFINITIONS AND INTERPRETATION** ..........................................**4**

    1.1    Definitions .................................................................................................. 4

    1.2    Interpretation, Application of Definitions and Rules of Construction........................... 13

    1.3    Computation of Time ................................................................................. 13

    1.4    Controlling Document .............................................................................. 14

    1.5    Plan Support Agreement .......................................................................... 14

**SECTION 2.        ADMINISTRATIVE AND PRIORITY CLAIMS**............................**14**

    2.1    Administrative Expense Claims .............................................................. 14

    2.2    Accrued Professional Compensation Claims ......................................... 15

    2.3    Priority Tax Claims ................................................................................. 15

    2.4    United States Trustee Statutory Fees..................................................... 15

**SECTION 3.        CLASSIFICATION OF CLAIMS AND INTERESTS**........................**15**

**SECTION 4.        TREATMENT OF CLAIMS AND INTERESTS** ............................**16**

    4.1    Other Priority Claims (Class 1)............................................................... 16

    4.2    Other Secured Claims (Class 2) ............................................................ 16

    4.3    Bond Claim (Class 3) .............................................................................. 16

    4.4    General Unsecured Claims (Class 4)...................................................... 17

    4.5    Preserved Intercompany Claims (Class 5)............................................. 17

    4.6    Intercompany Claims (Class 6)............................................................... 17

    4.7    Interests in Stayton (Class 7) ................................................................. 17

**SECTION 5.        CRAMDOWN**...........................................................................**17**

**SECTION 6.        MEANS FOR IMPLEMENTATION OF THIS PLAN**.....................**17**

    6.1    Refinancing Transaction ......................................................................... 17

    6.2    2020 Bond Documents ............................................................................ 18

    6.3    Series 2020 Bonds .................................................................................. 18

    6.4    Continued Corporate Existence.............................................................. 19

    6.5    Vesting of Assets in the Reorganized Debtor ....................................... 19

    6.6    Cancellation of Agreements, Security Interests, and Other Interests ............................. 20

    6.7    Exemption from Registration Requirements; Trading of Securities ............................... 20

    6.8    Organizational Documents....................................................................... 20

    6.9    Exemption from Certain Transfer Taxes and Recording Fees ...................................... 20

    6.10   Board and Officers of the Reorganized Debtor...................................... 21

    6.11   Directors and Officers Insurance Policies............................................. 21

    6.12   Other Insurance Policies ......................................................................... 21

    6.13   Preservation of Rights of Action............................................................ 22

6.14    Corporate Action ................................................................................................ 22

6.15    Effectuating Documents; Further Transactions ................................................. 23

SECTION 7.        ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED
                  LEASES .................................................................................................. 23

7.1    Assumption of Executory Contracts ..................................................................... 23

7.2    Inclusiveness ......................................................................................................... 23

7.3    Indemnification ..................................................................................................... 23

7.4    Full Release and Satisfaction ............................................................................... 24

7.5    Reservation of Rights ........................................................................................... 24

7.6    Nonoccurrence of Effective Date ......................................................................... 24

SECTION 8.        CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE
                  DATE ...................................................................................................... 24

8.1    Conditions Precedent to Confirmation ................................................................. 24

8.2    Conditions Precedent to the Effective Date ......................................................... 24

8.3    Waiver of Conditions ............................................................................................ 25

8.4    Effect of Failure of Conditions ............................................................................ 25

SECTION 9.        EFFECT OF CONFIRMATION ....................................................... 25

9.1    General .................................................................................................................. 25

9.2    Releases by the Debtor ......................................................................................... 26

9.3    Releases by Holders of Claims ............................................................................ 27

9.4    Exculpation ........................................................................................................... 28

9.5    Discharge of Claims and Interest ......................................................................... 28

9.6    Injunction .............................................................................................................. 28

9.7    Binding Nature of Plan ......................................................................................... 29

9.8    Protection Against Discriminatory Treatment ..................................................... 29

9.9    Preservation of Privilege and Defenses ............................................................... 29

9.10   Injunction Against Interference with Plan ........................................................... 30

9.11   Release of Liens .................................................................................................... 30

SECTION 10.       MODIFICATION, REVOCATION OR WITHDRAWAL OF THIS PLAN ... 30

10.1   Modification and Amendments ............................................................................. 30

10.2   Effect of Confirmation on Modifications ............................................................. 30

10.3   Revocation or Withdrawal of this Plan ................................................................ 30

SECTION 11.       RETENTION OF JURISDICTION ................................................... 31

SECTION 12.       MISCELLANEOUS PROVISIONS .................................................. 32

12.1   Section 1125(e) Good Faith Compliance .............................................................. 32

12.2   Substantial Consummation ................................................................................... 32

12.3   Closing of the Chapter 11 Case ............................................................................ 32

12.4     Plan Supplement ........................................................................................... 33

12.5     Further Assurances ........................................................................................ 33

12.6     Exhibits Incorporated .................................................................................... 33

12.7     Inconsistency .................................................................................................. 33

12.8     No Admissions ............................................................................................... 33

12.9     Reservation of Rights ..................................................................................... 33

12.10    Successors and Assigns .................................................................................. 33

12.11    Entire Agreement ........................................................................................... 33

12.12    Notices ........................................................................................................... 33

12.13    Severability .................................................................................................... 34

12.14    Governing Law ............................................................................................... 35

12.15    Request for Confirmation .............................................................................. 35

## INTRODUCTION

Tarrant County Senior Living Center, Inc. d/b/a The Stayton at Museum Way (the "*Debtor*") proposes this prepackaged chapter 11 plan of reorganization pursuant to section 1121(a) of the Bankruptcy Code for the resolution of outstanding claims against, and interest in, the Debtor.

Reference is made to the *Disclosure Statement for Debtor's Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* for a discussion of the Debtor's history and assets, a summary and analysis of this Plan, and certain related matters, including the distributions to be made under this Plan and the risk factors relating to consummation of this Plan. Capitalized terms used but not defined herein have the meanings ascribed to them in Section 1 of this Plan.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THIS PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

## SECTION 1.  DEFINITIONS AND INTERPRETATION

### 1.1  *Definitions*.

The following terms used herein shall have the respective meanings below:

"*2020 Bond Documents*" means the Indenture of Trust, the Loan Agreement, Amended Master Indenture (including Supplemental Master Trust Indenture No. 3 and the Series 2019 Note (as defined in the Disclosure Statement)), substantially in the forms attached to the Disclosure Statement as **Exhibit C**.

"*Accrued Professional Compensation Claim*" means, at any date, all accrued fees and reimbursable expenses for services rendered by a retained Professional in the Chapter 11 Case through and including such date, to the extent such fees and expenses have not been previously paid whether under a retention order with respect to such Retained Professional or otherwise.  To the extent that there is a Final Order denying some or all of a Retained Professional's fees or expenses, such denied amounts shall no longer be considered an Accrued Professional Compensation Claim.

"*Administrative Expense Claim*" means any Claim for costs and expenses of administration pursuant to sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Debtor's Estate and operating the business of the Debtor; (b) all fees and charges assessed against the Estate pursuant to 28 U.S.C. § 1930; (c) Claims for the value of any goods received by the Debtor within twenty (20) days before the Petition Date allowed in accordance with section 503(b)(9) of the Bankruptcy Code; and (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Case pursuant to sections 503(b)(3), (4) and (5) of the Bankruptcy Code.

"*Administrative Expense Claims Bar Date*" means the first Business Day that is thirty (30) days after the Effective Date or such other date ordered by the Bankruptcy Court.

*"Affiliate"* means, with respect to any Entity, an "affiliate" as defined in section 101(2) of the Bankruptcy Code as if such entity were a debtor.

*"Allowed"* means, with reference to any Claim against the Debtor, a Claim (i) as to which no objection or request for estimation has been filed on or before any deadline therefor set by the Bankruptcy Court or the expiration of such other applicable period fixed by the Bankruptcy Court or this Plan; (ii) as to which any objection has been settled, waived, withdrawn or denied by a Final Order or in accordance with this Plan; or (iii) that is allowed (a) by a Final Order, (b) by an agreement between the Holder of such Claim and the Debtor or (c) pursuant to the terms of this Plan. An "Allowed Claim" shall be net of any valid setoff exercised with respect to such Claim pursuant to the provisions of the Bankruptcy Code and applicable law. Moreover, any portion of a Claim that is satisfied, released, or waived during the Chapter 11 Case is not an Allowed Claim. Unless otherwise specified in this Plan, in section 506(b) of the Bankruptcy Code or by Final Order of the Bankruptcy Court, the term "Allowed Claim" shall not, for purposes of Distributions under this Plan, include interest, fees (including attorneys' fees), costs or charges on such Claim from and after the Petition Date.

*"Amended Master Indenture"* means the Amended and Restated Master Trust Indenture, Deed of Trust and Security Agreement, including Supplemental Master Trust Indenture No. 3, substantially in the forms attached as Schedule 4 to the Plan Support Agreement.

*"Assets"* means all assets of the Debtor of any nature whatsoever, including, without limitation, all property of the Debtor's Estate pursuant to section 541 of the Bankruptcy Code, Cash, Avoidance Actions, Causes of Action, equipment, inventory, tax refunds, claims of right, interests and property, real and personal, tangible and intangible, and proceeds of any of the foregoing.

*"Avoidance Actions"* means any and all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtor or the Estate under sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code and under similar state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such actions or remedies.

*"Ballot"* means the ballots upon which Holders of Impaired Claims entitled to vote on this Plan have indicated their acceptance or rejection of this Plan in accordance with the instructions regarding voting.

*"Bankruptcy Code"* means title 11 of the United States Code, as now in effect or hereafter applicable to this Chapter 11 Case.

*"Bankruptcy Court"* means the United States Bankruptcy Court for the Northern District of Texas having jurisdiction over the Chapter 11 Case.

*"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure, as amended, and the local rules of the Bankruptcy Court, as applicable to the Chapter 11 Case.

*"Bond Claims"* means any Claim arising from, or related to, the Original Bond Documents and the Bonds, including any and all outstanding principal, which is owed in the

amount $105,795,000.00, plus any and all accrued interest, fees (including, without limitation, professional fees), expenses, costs and other charges payable with respect to the Bonds, which Claims are Allowed pursuant to the Cash Collateral Order.

***"Bond Indenture"*** means that certain Indenture of Trust, dated as of October 1, 2009, between the Tarrant County Cultural Education Facilities Finance Corporation and The Bank of New York Mellon Trust Company, N.A., as predecessor to the Trustee.

***"Bonds"*** means, collectively, the Series 2009A Bonds, the Series 2009B Bonds and the Series 2009C Bonds. The Series 2009C Bonds are no longer outstanding under the Original Bond Documents.

***"Business Day"*** means any day of the calendar week, except Saturday, Sunday, a "legal holiday," as defined in Bankruptcy Rule 9006(a), or any day on which commercial banks are authorized or required by law to close in Dallas, Texas.

***"Cash"*** means cash and cash equivalents including, without limitation, checks and wire transfers.

***"Cash Collateral Order"*** means any order, whether interim or final, authorizing the use by the Debtor during the Chapter 11 Case of the cash collateral of the Trustee.

***"Causes of Action"*** means any claim, cause of action, controversy, demand, agreement, right (including to legal or equitable remedies), action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law, asserted or which may be asserted by or on behalf of the Debtor and/or the Estate, including: (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any Avoidance Action; and (d) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

***"Chapter 11 Case"*** means the Debtor's chapter 11 case pending in the Bankruptcy Court under case number 19-33756 (SGJ).

***"Claim"*** has the meaning set forth in section 101(5) of the Bankruptcy Code.

***"Class"*** means a class or category of Claims or Interests as classified and described in Section 3 of this Plan.

***"Collateral"*** means any property or interest in property of the Estate subject to a Lien, charge or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or other applicable law.

*"Confirmation Date"* means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the Bankruptcy Court's docket in the Chapter 11 Case.

*"Confirmation Hearing"* means the hearing(s) before the Bankruptcy Court on confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

*"Confirmation Order"* means the order entered by the Bankruptcy Court confirming this Plan in accordance with chapter 11 of the Bankruptcy Code and approving the Disclosure Statement and the other solicitation materials in respect of this Plan.

*"Creditor"* means a Holder of a Claim.

*"Cure"* or *"Cure Claim"* means a Claim (unless waived or modified by the applicable counterparty) based upon the Debtor's defaults under an Executory Contract assumed by the Debtor under sections 365 and 1123 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

*"Debtor"* means Stayton as debtor and debtor in possession, and includes the Estate.

*"Debtor in Possession"* means the Debtor in its capacity as debtor in possession in the Chapter 11 Case pursuant to sections 1101, 1107(a) and 1108 of the Bankruptcy Code.

*"Deficiency Claim"* means a General Unsecured Claim for the difference between (a) the aggregate amount of an Allowed Claim and (b) the value received on account of the portion of such Allowed Claim that is a Secured Claim.

*"Definitive Documents"* means the definitive documents and agreements governing this Plan and the transactions contemplated thereunder (including any related orders, agreements, instruments, schedules, or exhibits) that are contemplated by and referenced in this Plan (as amended, modified, or supplemented from time to time), including: (i) the motion seeking authority to use cash collateral and grant adequate protection and the Cash Collateral Orders to be entered by the Bankruptcy Court approving such motion and all security documents and other loan documents in connection therewith; (ii) this Plan (including all exhibits and supplements thereto); (iii) the Disclosure Statement and the other solicitation materials in respect of this Plan; (iv) the Confirmation Order and pleadings in support of entry of the Confirmation Order; (v) the 2020 Bond Documents and related documentation, any other exit financing contemplated by the Plan Term Sheet, and all security documents and other related loan documents; (vi) those motions and proposed court orders that the Debtor file on or after the Petition Date and seek to have heard on an expedited basis at the "first day hearing"; (vii) the documents or agreements for the governance of the Reorganized Debtor, including any membership agreements and certificates of incorporation; (viii) all management or consulting agreements of the Reorganized Debtor; (ix) all agreements relating to Interests in the Reorganized Debtor, if applicable; and (x) such other documents, pleadings, agreements or supplements as may be reasonably necessary or advisable to implement the Refinancing, and in the case of all such documents described in clauses (i) through (x) consistent in all respects with all other terms and provision of the Plan Term Sheet, and, except

as otherwise set forth herein, acceptable in form and substance to the Trustee, Lifespace, and the Debtor.

*"Disallowed Claim"* means any Claim or portion thereof which has been disallowed by a Final Order and includes any Claim which is not an Allowed Claim for any other reason.

*"Disclosure Statement"* means the disclosure statement (including all exhibits and schedules thereto or referenced therein) that relates to this Plan, as such disclosure statement may be altered, supplemented, modified, or amended from time to time, including all exhibits and schedules thereto, to be approved by the Confirmation Order.

*"Distribution"* means Cash, property, interests in property or other value distributed to Holders of Allowed Claims, or their designated agents, under this Plan.

*"Effective Date"* means the first Business Day selected by the Debtor on which (a) the conditions specified in Section 8 of this Plan have been either satisfied or waived in accordance with the terms of Section 8, and (b) no stay of the Confirmation Order is in effect.

*"Estate"* means the estate created in the Chapter 11 Case containing all property and other interests of the Debtor pursuant to section 541 of the Bankruptcy Code.

*"Exculpated Party"* means, collectively, in each case in its capacity as such: (a) the Debtor; (b) the Reorganized Debtor; (c) the Trustee; (d) the Steering Committee; (e) Lifespace, and (f) with respect to each of the foregoing entities in clauses (a) and (e), such Entity and its current and former predecessors, successors and assigns, subsidiaries, affiliates, managed accounts or funds, and all of their respective current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals.

*"Executory Contract"* means all contracts and leases to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

*"Facility"* means the continuing care retirement community owned and operated by Stayton, known as "The Stayton at Museum Way."

*"Final Order"* means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, that has been entered on the docket in the Chapter 11 Case or the docket of any other court of competent jurisdiction, and, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have expired; *provided*, *however*, that the possibility

8

that a motion under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024, may be filed relating to such order shall not cause such order to not be a Final Order.

*"General Administrative Claim"* means any Administrative Expense Claim, other than an Accrued Professional Compensation Claim and claims for fees and expenses under 28 U.S.C § 1930(a).

*"General Unsecured Claim"* means any Claim, including, without limitation, any Deficiency Claim, asserted against the Debtor that is not (a) a Secured Claim, (b) a Claim entitled to priority under the Bankruptcy Code or any Final Order of the Bankruptcy Court, (c) a Bond Claim, (d) an Intercompany Claim or (e) a Preserved Intercompany Claim.

*"Governmental Unit"* has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

*"Holder"* means the legal or beneficial holder of a Claim or Interest.

*"Impaired"* means, with respect to a Claim or Interest, that such Class of Claims or Interests is impaired within the meaning of section 1124 of the Bankruptcy Code.

*"Indemnification Provisions"* means the Debtor's indemnification provisions in effect as of the Petition Date, whether in the Debtor's bylaws, certificates of incorporation, other formation documents, board resolutions, management or indemnification agreements, employment contracts, or otherwise providing a basis for any obligation of the Debtor to indemnify, defend, reimburse, or limit the liability of, or to advances fees and expenses to, any of the Debtor's current and former directors, officers, equity holders, managers, members, employees, accountants, investment bankers, attorneys, other professionals, and professionals of the Debtor, and such current and former directors', officers', and managers' respective Affiliates, each of the foregoing solely in their capacity as such.

*"Insurance Policies"* means, collectively, all of the Debtor's insurance policies.

*"Intercompany Claim"* means any Claim against the Debtor held by an Affiliate that is not a Preserved Intercompany Claim.

*"Interest"* means the interest of any Holder in an equity security of the Debtor within the meaning of section 101(16) of the Bankruptcy Code represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership or membership interest in the Debtor, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest, including a partnership, limited liability company or similar interest in the Debtor.

*"Issuer"* means the Tarrant County Cultural Education Facilities Finance Corporation.

*"Lien"* has the meaning set forth in section 101(37) of the Bankruptcy Code.

*"Lifespace"* means Lifespace Communities, Inc.

9

"***Loan Agreement***" means that Loan Agreement, dated as of October 1, 2009 between Stayton and the Issuer.

"***Master Indenture***" means the Original Master Indenture prior to the Effective Date and on and after the Effective Date the Amended Master Indenture.

"***Original Bond Documents***" means, collectively, the Bond Indenture, the Original Master Indenture, the Loan Agreement, and any other documents entered into in connection with the Bonds.

"***Original Master Indenture***" means that Master Trust Indenture, Deed of Trust and Security Agreement, dated as of October 1, 2009, between Stayton and the Trustee, as amended by the Supplement Indenture Number 1, dated as of October 1, 2009, and the Supplemental Indenture No. 2, effective as of June 20, 2019.

"***Other Priority Claim***" means any Claim entitled to priority under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

"***Other Secured Claim***" means a Secured Claim other than the Bond Claim.

"***Person***" means an individual, corporation, partnership, limited liability company, joint venture, association, joint stock company, trust, estate, unincorporated organization, governmental unit, government (or agency or political subdivision thereof), or other entity, including, without limitation, the Debtor.

"***Petition Date***" means the date on which the Debtor commences the Chapter 11 Case.

"***Plan***" means this prepackaged chapter 11 plan of reorganization, including all appendices, exhibits, schedules and supplements hereto (including any appendices, exhibits, schedules and supplements to this Plan that are contained in the Plan Supplement), as it may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and the Plan Support Agreement.

"***Plan Supplement***" means the compilation of documents and forms of documents, schedules, and exhibits to this Plan, in each case subject to the terms and provisions of the Plan Support Agreement, to be filed no later than ten (10) days prior to the Confirmation Hearing, as amended, supplemented, or modified from time to time in accordance with the terms hereof, the Bankruptcy Code, the Bankruptcy Rules and the Plan Support Agreement.

"***Plan Support Agreement***" means that certain Plan Support Agreement entered into on May 10, 2019 by and among the Debtor, the Trustee, the Steering Committee and Lifespace, and any subsequent Entity that becomes a party thereto pursuant to the terms thereof, attached as **Exhibit B** to the Disclosure Statement.

"***Plan Term Sheet***" means that certain term sheet describing the key terms of a plan of reorganization for Stayton, attached as Schedule 1 to the Plan Support Agreement.

***"Preserved Intercompany Claims"*** means, collectively, (i) each Intercompany Claim arising on or after June 20, 2019 under (a) management agreements or (b) any administration or operational agreements pursuant to which an affiliate of Lifespace or Senior Quality Lifestyles Corporation pays costs incurred on Stayton's behalf to third parties and allocates to, and receives reimbursement of such costs, from Stayton; and (ii) the Intercompany Claim, if any, arising from any draws prior to the Effective Date on the Liquidity Support Agreement (as defined in the Disclosure Statement) provided by Lifespace.

***"Priority Claim"*** means any Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim, Accrued Professional Compensation Claim or Priority Tax Claims.

***"Priority Tax Claim"*** means any Claim of a Governmental Unit of a kind entitled to priority under section 507(a)(8) of the Bankruptcy Code.

***"Pro Rata"*** shall mean the proportion that the amount of a Claim in a particular Class or Classes bears to the aggregate amount of all Claims in such Class or Classes, unless this Plan otherwise provides.

***"Professionals"*** means all professionals employed in the Chapter 11 Case pursuant to sections 327, 363 and 1103 of the Bankruptcy Code.

***"Proof of Claim"*** means a proof of Claim filed against the Debtor in the Chapter 11 Case.

***"Refinancing"*** means the refinancing of existing debt and certain other obligations of Stayton to be implemented through this Plan and for which the principal terms are set forth in the Plan Term Sheet.

***"Refinancing Transaction"*** shall have the meaning ascribed to it in the Disclosure Statement.

***"Reinstated"*** or ***"Reinstatement"*** means, with respect to Claims and Interests, that the Claims or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

***"Related Persons"*** means, with respect to any Person, such Person's predecessors, successors, assigns and present and former affiliates (whether by operation of law or otherwise) and each of their respective members, partners, equity holders, certificate holders, officers, directors, employees, representatives, advisors, attorneys, auditors, agents, and professionals, in each case acting in such capacity on or any time prior to or after the Petition Date, and any Person claiming by or through any of them.

***"Released Parties"*** means (i) the Debtor; (ii) the Reorganized Debtor; (iii) the Trustee; (iv) the Steering Committee; (v) Lifespace, (vi) the Issuer, and (vii) with respect to each of the foregoing entities in clauses (i) and (vi), such entity and its current and former predecessors, successors and assigns, subsidiaries, affiliates, managed accounts or funds, and all of their respective current and former officers, directors, principals, shareholders, members, partners,

employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals.

*"Releasing Parties"* means all Persons who have held, hold or may hold Claims or Interests that have been released, discharged or are subject to exculpation pursuant to this Plan.

*"Reorganized Debtor"* means the Debtor, as reorganized pursuant to and under this Plan on or after the Effective Date, and its successors.

*"Retained Professional"* and collectively, *"Retained Professionals"* means any Entity: (a) employed in the Chapter 11 Case under a Final Order in accordance with section 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, under sections 327, 328, 329, 330, or 331 of the Bankruptcy Code (other than an ordinary course professional retained under an order of the Bankruptcy Court); or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court under section 503(b)(4) of the Bankruptcy Code.

*"Residency Agreements"* means all Continuing Care Contracts, Assisted Living Residency Agreements, SNF Residency Agreements (each as defined in the Disclosure Statement) and any additional documents related thereto.

*"Residents"* shall mean all persons that reside at the Facility and are parties to Residency Agreements.

*"Secured Claim"* means any Claim of a Creditor that is secured by property of the Estate, to the extent of the value of the Creditor's interest in the Estate's interest in such property, as provided in section 506(a) of the Bankruptcy Code. Secured Claim also means a Claim of a Creditor that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the amount subject to setoff, as provided in section 506(a) of the Bankruptcy Code. To the extent the value of any property securing such Claim is less than the amount of such Claim, the difference between such value and such Claim is a *"Deficiency Claim"* unless the holder of such Claim validly elects under section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

*"Series 2009A Bonds"* means those certain Series 2009A Retirement Facility Revenue Bonds (The Stayton At Museum Way Project), issued by the Issuer pursuant to the Bond Indenture.

*"Series 2009B Bonds"* means those certain Series 2009B Retirement Facility Revenue Bonds (The Stayton At Museum Way Project), issued by the Issuer pursuant to the Bond Indenture.

*"Series 2009C Bonds"* means those certain Series 2009C Retirement Facility Revenue Bonds (The Stayton At Museum Way Project), issued by the Issuer pursuant to the Bond Indenture.

"***Series 2020 Bonds***" means those certain Tarrant County Cultural Education Facilities Finance Corporation Retirement Facility Revenue Bonds (The Stayton at Museum Way Project), Series 2019, to be issued by the Issuer pursuant to the 2020 Bond Documents in accordance with the terms and conditions set forth in this Plan.

"***Steering Committee***" means, collectively, each (a) member of an informal steering committee comprised of holders of Bonds holding, collectively, at least sixty-seven (67%) of the outstanding aggregate principal amount of all Bonds issued that are parties to the Plan Support Agreement and (b) holder of the Bonds that executes a joinder to the Plan Support Agreement pursuant to its terms.

"***Stayton***" means the Debtor.

"***Trustee***" means (i) UMB Bank, N.A., in its capacity as successor trustee under the Bond Indenture, (ii) UMB Bank, N.A., in its capacity as successor master trustee under the Master Indenture, and (iii) any successor trustee in either capacity.

"***Unimpaired***" means, with respect to a Claim or Interest, a Class of Claims or Interests that is "unimpaired" within the meaning of section 1124 of the Bankruptcy Code.

"***United States Trustee***" means the Office of the United States Trustee for the Northern District of Texas.

"***Voting Agent***" means Epiq Corporate Restructuring, LLC.

"***Voting Record Date***" shall have the meaning ascribed to such term in the Disclosure Statement.

    1.2    ***Interpretation, Application of Definitions and Rules of Construction.*** Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan, as the same may be amended, supplemented, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to this Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Unless otherwise provided, any reference in this Plan to an existing document, exhibit or schedule means such document, exhibit or schedule as it may have been amended, restated, revised, supplemented or otherwise modified. If a time or date is specified for any payments or other Distribution under this Plan, it shall mean on or as soon as reasonably practicable thereafter. Further, where appropriate from a contextual reading of a term, each term includes the singular and plural form of the term regardless of how the term is stated and each stated pronoun is gender neutral. In the event of any ambiguity or conflict between this Plan and the Disclosure Statement, the provisions of this Plan shall govern.

    1.3    ***Computation of Time***. Bankruptcy Rule 9006 shall apply to all computations of time periods prescribed or allowed by this Plan unless otherwise set forth herein

13

or provided by the Bankruptcy Court.  Any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter unless otherwise specified herein

       1.4    ***Controlling Document.***  In the event of an inconsistency between this Plan and the Disclosure Statement, the terms of this Plan shall control in all respects.  In the event of an inconsistency between this Plan and the Plan Supplement, this Plan shall control.  In the event of an inconsistency between this Plan and the Confirmation Order, the Confirmation Order shall control.

       1.5    ***Plan Support Agreement.***  Notwithstanding anything to the contrary in this Plan, the Plan Supplement, the Confirmation Order, or the Disclosure Statement, any and all consent rights in the Plan Support Agreement with respect to the form and substance of this Plan, the Plan Supplement, the Definitive Documents and any other documents relating to the Refinancing, including, without limitation, any amendments, restatements, supplements, or other modifications to such documents and any consents, waivers, or other deviations under or from any such documents, shall be incorporated by reference herein and fully enforceable as if stated in full herein.  Solely with respect to any consent or consultation rights in this Plan, in the event of an inconsistency between this Plan, the Plan Supplement, the Disclosure Statement, the Definitive Documents and the Plan Support Agreement, the Plan Support Agreement shall control.

## SECTION 2.  ADMINISTRATIVE AND PRIORITY CLAIMS

       2.1    ***Administrative Expense Claims***.  Subject to the provisions of sections 328, 330(a), and 331 of the Bankruptcy Code and except to the extent that a Holder of an Allowed General Administrative Claim and the Debtor before the Effective Date or the Reorganized Debtor after the Effective Date agree to less favorable treatment, each Holder of an Allowed General Administrative Claim will be paid the full unpaid amount of such Allowed General Administrative Claim in Cash: (a) if such Allowed General Administrative Claim is based on liabilities that the Debtor incurred in the ordinary course of business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed General Administrative Claim and without any further action by any Holder of such Allowed General Administrative Claim; (b) if such Allowed General Administrative Claim is due, on the Effective Date, or, if such Allowed General Administrative Claim is not due as of the Effective Date, on the date that such Allowed General Administrative Claim becomes due or as soon as reasonably practicable thereafter; (c) if a General Administrative Claim is not Allowed as of the Effective Date, on the date that is no later than thirty (30) days after the date on which an order allowing such General Administrative Claim becomes a Final Order of the Bankruptcy Court or as soon as reasonably practicable thereafter; or (d) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

       To be eligible to receive Distributions under this Plan on account of an Administrative Expense Claim that is not otherwise Allowed by this Plan, a request for payment of an Administrative Expense Claim must have been or be filed with the Bankruptcy Court on or before the Administrative Expense Claims Bar Date.  Any Administrative Expense Claim that is not asserted in accordance herewith shall be deemed disallowed under this Plan and shall be forever barred against the Debtor, the Debtor's Estate, or any of the Debtor's Assets or property,

and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

        2.2    ***Accrued Professional Compensation Claims***. All Professionals seeking payment of Accrued Professional Compensation Claims shall (i) file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred in the Chapter 11 Case by the date that is forty-five (45) days after the Effective Date and (ii) be paid (a) the full unpaid amount as is Allowed by the Bankruptcy Court within five (5) Business Days after the date that such Claim is Allowed by order of the Bankruptcy Court, or (b) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Accrued Professional Compensation Claim and the Debtor. Any Accrued Professional Compensation Claim that is not asserted in accordance with this Section 2.2 shall be deemed disallowed under this Plan and shall be forever barred against the Debtor, the Debtor's Estate, or any of its Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

        2.3    ***Priority Tax Claims***. Pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, unless otherwise agreed by a Holder of an Allowed Priority Tax Claim and the Debtor, each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of its Priority Tax Claim, payment in full in Cash of the Allowed amount of the Priority Tax Claim on the later of the Effective Date or as soon as practicable after the date when such Claim becomes an Allowed Claim.

        2.4    ***United States Trustee Statutory Fees***. The Debtor and the Reorganized Debtor, as applicable, will pay fees payable under 28 U.S.C § 1930(a), including fees, expenses, and applicable interest payable to the United States Trustee, for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.

## SECTION 3. CLASSIFICATION OF CLAIMS AND INTERESTS

        3.1    Except as set forth herein, all Claims against and Interests in the Debtor are placed in a particular Class. The Debtor has not classified Administrative Expense Claims, Accrued Professional Compensation Claims, and Priority Tax Claims.

        The following table classifies Claims against and Interests in the Debtor for all purposes, including voting, confirmation and Distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. This Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date. Each Class set forth below is treated hereunder as a distinct Class for voting and Distribution purposes.

Subject to all other applicable provisions of this Plan (including its Distribution provisions), classified Claims shall receive the treatment described in section 4 herein. This Plan will not provide any Distributions on account of a Claim to the extent that such Claim has been disallowed, released, withdrawn, waived, or otherwise satisfied or paid as of the Effective Date, including, without limitation, payments by third parties.

The following table designates the Classes of Claims against and Interests in the Debtor and specifies which of those Classes are (i) Impaired or Unimpaired by this Plan, (ii) entitled to vote to accept this Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject this Plan, or (iv) deemed to accept this Plan.

| Class | Claims and Interests | Status | Entitled to Vote |
|-------|---------------------|--------|------------------|
| 1 | Other Priority Claims | Unimpaired | No (Deemed to Accept) |
| 2 | Other Secured Claims | Unimpaired | No (Deemed to Accept) |
| 3 | Bond Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Unimpaired | No (Deemed to Accept) |
| 5 | Preserved Intercompany Claims | Unimpaired | No (Deemed to Accept) |
| 6 | Intercompany Claims | Impaired | No (Deemed to Reject) |
| 7 | Interests in Stayton | Unimpaired | No (Deemed to Accept) |

## SECTION 4. TREATMENT OF CLAIMS AND INTERESTS

4.1 *Other Priority Claims (Class 1)*. This Class consists of all Allowed Other Priority Claims against the Debtor that are specified as having priority in section 507(a) of the Bankruptcy Code, if any such Claims exist as of the Effective Date. Except to the extent that a Holder of an Allowed Other Priority Claim against the Debtor has agreed to a different treatment of such Claim, each such Holder shall receive, in full satisfaction of such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date; (ii) the date the Other Priority Claim becomes an Allowed Claim; or (iii) the date for payment provided by any agreement or arrangement between the Debtor and the Holder of the Allowed Other Priority Claim against the Debtor.

4.2 *Other Secured Claims (Class 2)*. This Class consists of all Other Secured Claims against the Debtor. In full satisfaction of an Allowed Other Secured Claim, on the later of the Effective Date and the date on which the Other Secured Claim is Allowed, each Holder of an Allowed Other Secured Claim shall receive, at the sole and exclusive option of the Reorganized Debtor: (a) Cash equal to the amount of such Claim; or (b) treatment of such Allowed Other Secured Claim in any other manner that renders the Claim Unimpaired, including Reinstatement.

4.3 *Bond Claim (Class 3)*. This Class consists of the Bond Claims of the holders of the Bonds and the Trustee against the Debtor. The Bond Claims are Allowed Claims. Upon the terms and subject to the conditions set forth in this Plan, in full and final satisfaction, settlement, release, and discharge of the Bond Claims, each Holder of a Bond Claim shall receive its Pro Rata share of the Series 2020 Bonds on the Effective Date or as soon as practicable thereafter.

16

4.4 ***General Unsecured Claims (Class 4)***. This Class consists of all General Unsecured Claims against the Debtor. Except to the extent that a Holder of an Allowed General Unsecured Claim against the Debtor agrees to a different treatment of such Claim, on the Effective Date, (i) the Debtor or Reorganized Debtor, as applicable, will pay or treat such General Unsecured Claim, including a Claim of a Resident or under a Residency Agreement, in the ordinary course of business as if the Chapter 11 Case has not been commenced, or (ii) such Holder will receive such other treatment so as to render such General Unsecured Claim Unimpaired, in each case subject to all defenses or disputes the Debtor may assert as to the validity or amount of such Claims.

4.5 ***Preserved Intercompany Claims (Class 5)***. This Class consists of all Preserved Intercompany Claims against the Debtor. In full satisfaction of an Allowed Preserved Intercompany Claim, on the later of the Effective Date and the date on which the Preserved Intercompany Claim is Allowed, each Holder of an Allowed Preserved Intercompany Claim shall be Reinstated.

4.6 ***Intercompany Claims (Class 6)***. This Class consists of all Intercompany Claims against the Debtor. All Intercompany Claims shall be extinguished without distribution.

4.7 ***Interests in Stayton (Class 7)***. This Class consists of Interests of the Debtor. On the Effective Date, Interests of the Debtor shall be Reinstated, and holders of such Interests shall retain such Interests.

## SECTION 5. CRAMDOWN.

If all applicable requirements for confirmation of this Plan are met as set forth in section 1129(a) of the Bankruptcy Code except subsection (8) thereof, the Debtor may request that the Bankruptcy Court confirm this Plan in accordance with section 1129(b) of the Bankruptcy Code on the bases that this Plan is fair and equitable and does not discriminate unfairly with respect to each Class of Claims or Interests that is Impaired under, and has not accepted or is deemed to reject, this Plan.

## SECTION 6. MEANS FOR IMPLEMENTATION OF THIS PLAN

6.1 ***Refinancing Transaction***. On the Effective Date, the Debtor, the Reorganized Debtor, or any other entities may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate this Plan, including: (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, or reorganization containing terms that are consistent with the terms of this Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of this Plan; (c) the filing of appropriate certificates of incorporation, merger, or consolidation with the appropriate governmental authorities under applicable law; and (d) all other actions that the Debtor or the Reorganized Debtor, as applicable, determines are necessary or appropriate.

The Confirmation Order shall and shall be deemed to, under both section 1123 and section 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary

or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate this Plan.

6.2 **_2020 Bond Documents_**. The Reorganized Debtor shall be authorized to enter into the 2020 Bond Documents on the Effective Date. On the Effective Date, and following the consummation of the Refinancing Transaction, the 2020 Bond Documents shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtor, enforceable in accordance with their terms. The financial accommodations to be extended under the 2020 Bond Documents are being extended and shall be deemed to have been extended in good faith and for legitimate business purposes and are reasonable and shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law. On the Effective Date, all of the Liens and security interests to be granted in accordance with the 2020 Bond Documents (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on and security interests in the collateral granted thereunder in accordance with the terms of the 2020 Bond Documents, (c) shall be deemed automatically perfected on the Effective Date (without any further action being required by the Reorganized Debtor, the Trustee, or any of Holders of Series 2020 Bonds), having the priority set forth in the 2020 Bond Documents and subject only to such Liens and security interests as may be permitted under the 2020 Bond Documents, and (d) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized Debtor, and the Entities granted such Liens and security interests are authorized to make all filings and recordings and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of this Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required) and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

6.3 **_Series 2020 Bonds_**. On the Effective Date, the Reorganized Debtor shall cause the Issuer to issue the Series 2020 Bonds, the primary economic terms of which are described below:[2]

| Principal: | $105,795,000, plus all accrued and unpaid interest on the Bonds through the Effective Date, on the terms and conditions set forth in the 2020 Bond Documents. |
|---|---|

---

[2] The information set forth in the accompanying chart is solely for summary purposes. To the extent there is any discrepancy between the information set forth in the chart and the 2020 Bond Documents, the 2020 Bond Documents, copies of which are attached to the Disclosure Statement as Exhibit C, control.

| | |
|---|---|
| **Rate of Interest and Payment Terms:** | The Series 2020 Bonds will bear interest at a fixed rate of 5.75% per annum, mature in 2054, subject to mandatory sinking fund payments commencing after the 5th anniversary of the Effective Date of this Plan on a 35-year level debt service amortization schedule. |
| **Maturity Date:** | December 1, 2054 |
| **Call Protection:** | The Series 2020 Bonds are subject to optional redemption at 107% from the Effective Date of this Plan to the third anniversary of the Effective Date of this Plan, with the optional redemption premium declining by 1% on such anniversary and on each subsequent anniversary until the Series 2020 Bonds become redeemable at par. |
| **Collateral:** | Pursuant to Section 3.01 of the Amended Master Indenture, the Liens and security interests granted in the Original Master Indenture will continue to secure the obligations under the Amended Master Indenture including the Series 2019 Note. Pursuant to such grants, the Trustee has Liens and security interests in substantially all of Stayton's assets, including all real and personal property, including Stayton's Gross Revenues (as defined in the Amended Master Indenture). |

The issuance of the Series 2020 Bonds for distribution under this Plan is authorized without the need for further corporate action, and all of the Series 2020 Bonds issued or issuable under this Plan shall be duly authorized and validly issued under this Plan. The Reorganized Debtor shall cause to be delivered customary legal opinions and other documents in connection with the issuance of the Series 2020 Bonds, in form and substance acceptable to the Trustee, including, without limitation, (i) the Opinion of Bond Counsel described in the 2020 Bond Documents, and (ii) a lender's title policy with respect to the real property securing the Reorganized Debtor's obligations under the 2020 Bond Documents, and the first mortgage position of the Trustee, subject to such exceptions as are reasonably acceptable to the Trustee.

6.4     ***Continued Corporate Existence***. Except as otherwise provided in this Plan, the Debtor shall continue to exist as of the Effective Date as a separate corporate Entity, with all the powers of a corporation under the applicable law in the jurisdiction where the Debtor is incorporated or formed and under the certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended by this Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be under this Plan and require no further action or approval.

6.5     ***Vesting of Assets in the Reorganized Debtor***. Except as otherwise provided in this Plan or any agreement, instrument, or other document incorporated herein, including the Liens and security interests granted under the Original Bond Documents as such Liens and security interests continue to secure the obligations related to the 2020 Bond Documents, on the Effective Date, all property in the Estate, all Causes of Action, and any property acquired by the Debtor under this Plan shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in this Plan,

the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

6.6    ***Cancellation of Agreements, Security Interests, and Other Interests***.  On the Effective Date, except to the extent otherwise specifically provided herein, including to the extent certain of the Original Bond Documents continue in existence pursuant to their amendment and restatement pursuant to the 2020 Bond Documents, all notes, instruments, certificates, and other documents evidencing the Bonds, shall be cancelled and the obligations of the Debtor or the Reorganized Debtor thereunder or in any way related thereto (including, without limitation, any guarantee obligations of any non-Debtor Affiliates with respect to the Bond Claims) shall be discharged and the agents and Trustee thereunder shall be automatically and fully discharged from all duties and obligations thereunder.  Except to the extent certain security interests and Liens continue in existence pursuant to the amendment and restatement of the Original Bond Documents pursuant to the 2020 Bond Documents, all existing security interests and/or Liens and/or any other Secured Claims shall also be automatically released, discharged, terminated, and of no further force and effect as of the Effective Date.  Notwithstanding the foregoing, following confirmation of the Plan or the occurrence of the Effective Date, to the extent that the Original Bond Documents do not otherwise remain in effect pursuant to the 2020 Bond Documents, any credit document or agreement that governs the rights of any Holder of a Bond Claim shall continue in effect for purposes of (1) allowing Holders of such Allowed Claims to receive distributions under this Plan; (2) allowing and preserving the rights of the agents or representative of Holders of such Claims to make distributions on account of such Allowed Claims, as provided herein; (3) preserving all exculpations in favor of the Trustee; (4) allowing the Trustee to enforce any rights and obligations owed to it under this Plan or the Confirmation Order; and (5) permitting the Trustee to appear and be heard in the Chapter 11 Case, or in any proceeding in the Bankruptcy Court or any other court.

6.7    ***Exemption from Registration Requirements; Trading of Securities***.  The offering, issuance, and distribution of Series 2020 Bonds issued under this Plan shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act under section 3(a)(2) and 3(a)(4) of the Securities Act of 1933, as amended and under section 1145(a)(1) of the Bankruptcy Code.  Any and all Series 2020 Bonds issued under this Plan will be freely tradable under the Securities Act by the recipients thereof.

6.8    ***Organizational Documents***.  Subject to Section 6.1 of this Plan, the Reorganized Debtor shall enter into such agreements and amend its corporate governance documents to the extent necessary to implement the terms and provisions of this Plan.  Under section 1123(a)(6) of the Bankruptcy Code, the organizational documents of the Reorganized Debtor will prohibit the issuance of non-voting Interests.  After the Effective Date, the Reorganized Debtor will amend and restate its organizational documents, and the Reorganized Debtor will file its respective certificates or articles of incorporation, bylaws, or such other applicable formation documents, and other constituent documents as permitted by the laws of the state of incorporation and the organization documents of the Reorganized Debtor.

6.9    ***Exemption from Certain Transfer Taxes and Recording Fees***.  To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfer from the Debtor

to the Reorganized Debtor or to any Entity under, in contemplation of, or in connection with this Plan or under: (1) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Debtor or the Reorganized Debtor; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

6.10     ***Board and Officers of the Reorganized Debtor.***  Except as stated below, as of the Effective Date, the members of the board of directors and officers of the Debtor as of the Petition Date shall remain in their current capacities as director and officers of the Reorganized Debtor, in each case subject to the ordinary rights and powers of the board of directors to remove or replace the officers in accordance with the Reorganized Debtor's organizational documents and any applicable employment agreements that are assumed pursuant to this Plan.  Upon the Effective Date, Louis E. Robichaux IV, as the Chief Restructuring Officer, and Joe Friedman, as the independent director appointed in connection with the Refinancing Transaction, will no longer serve in such capacities.  From and after the Effective Date, each officer of the Reorganized Debtor shall serve pursuant to the terms of the Reorganized Debtor's charters and bylaws or other formation and constituent documents, and applicable laws of the Reorganized Debtor's jurisdiction of formation.

6.11     ***Directors and Officers Insurance Policies***. Notwithstanding anything in this Plan to the contrary, the Reorganized Debtor shall be deemed to have assumed all of the Debtor's D&O Liability Insurance Policies under section 365(a) of the Bankruptcy Code effective as of the Effective Date.  Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtor's foregoing assumption of the unexpired D&O Liability Insurance Policies.  Notwithstanding anything to the contrary contained in this Plan, Confirmation of this Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtor under this Plan as to which no Proof of Claim need be Filed.

6.12     ***Other Insurance Policies***.  On the Effective Date, the Debtor's Insurance Policies in existence as of the Effective Date shall be Reinstated and continued in accordance with their terms and, to the extent applicable, shall be deemed assumed by the Reorganized Debtor under section 365 of the Bankruptcy Code and Section 7.1 hereof.  Nothing in this Plan shall affect, impair, or prejudice the rights of the insurance carriers, the insureds, or the Reorganized Debtor under the Insurance Policies in any manner, and such insurance carriers, the insureds, and Reorganized Debtor shall retain all rights and defenses under such Insurance Policies.  The

Insurance Policies shall apply to and be enforceable by and against the insureds and the Reorganized Debtor in the same manner and according to the same terms and practices applicable to the Debtor, as existed prior to the Effective Date. Following the Effective Date, the Debtor's Insurance Policies shall comply with all applicable covenants set forth in the 2020 Bond Documents.

6.13 ***Preservation of Rights of Action***. In accordance with section 1123(b) of the Bankruptcy Code but subject to the releases set forth in Section 9 herein, including but not limited to the release of all Causes of Action against the Trustee and the Steering Committee, all Causes of Action that the Debtor may hold against any Entity shall vest in the Reorganized Debtor on the Effective Date. Thereafter, the Reorganized Debtor shall have the exclusive right, authority, and discretion to determine, initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, whether arising before or after the Petition Date, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. **Subject to the releases set forth in Section 9 herein, no Entity may rely on the absence of a specific reference in this Plan, the Plan Supplement, or the Disclosure Statement to any specific Cause of Action as any indication that the Debtor or Reorganized Debtor, as applicable, will not pursue any and all available Causes of Action. The Debtor or Reorganized Debtor, as applicable, expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in this Plan, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches, shall apply to any Cause of Action upon, after, or as a consequence of the confirmation of the Plan or the occurrence of the Effective Date**.

6.14 ***Corporate Action***. Upon the Effective Date, all actions contemplated by this Plan shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, directors, managers, or officers of the Debtor, the Reorganized Debtor, or any other Entity, including: (1) assumption of Executory Contracts; (2) selection of the directors, managers, and officers for the Reorganized Debtor; (3) the execution of and entry into the 2020 Bond Documents; (4) the issuance and distribution of the Series 2020 Bonds as provided herein; and (5) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the transactions contemplated by this Plan (whether to occur before, on, or after the Effective Date). All matters provided for in this Plan involving the company structure of the Reorganized Debtor and any company action required by the Debtor or Reorganized Debtor, as applicable, in connection therewith shall be deemed to have occurred on and shall be in effect as of the Effective Date without any requirement of further action by the security holders, directors, managers, authorized persons, or officers of the Debtor or Reorganized Debtor, as applicable.

On or prior to the Effective Date, the appropriate officers, directors, managers, or authorized persons of the Debtor or Reorganized Debtor, as applicable (including any president, vice-president, chief executive officer, treasurer, general counsel, or chief financial officer thereof), shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, certificates of incorporation, certificates of formation, bylaws, operating agreements, and instruments contemplated by this Plan (or necessary or desirable to effect the transactions

contemplated by this Plan) in the name of and on behalf of the Debtor or the Reorganized Debtor, as applicable, including (1) the 2020 Bond Documents, (2) the Series 2020 Bonds and (3) any and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

6.15 *Effectuating Documents; Further Transactions*. Prior to, on, and after the Effective Date, the Debtor and Reorganized Debtor and the directors, managers, officers, authorized persons, and members of the boards of directors or managers and directors thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and provisions of this Plan, the 2020 Bond Documents, and any securities issued under this Plan in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorizations, actions, or consents except for those expressly required under this Plan. All counterparties to any documents described in this paragraph are authorized to and may execute any such documents as may be required or provided by such documents without further order of the Bankruptcy Court.

## SECTION 7. ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1 *Assumption of Executory Contracts*. Except as otherwise provided in this Plan, each of the Executory Contracts of the Debtor, including the Residency Agreements, shall be deemed assumed as of the Effective Date, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, pursuant to section 365 of the Bankruptcy Code. The Confirmation Order may constitute an order of the Bankruptcy Court approving the assumption of each of the Executory Contracts, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code and effective on the occurrence of the Effective Date.

7.2 *Inclusiveness*. Except as otherwise provided herein or agreed to by the Debtor and the applicable counterparty, each Executory Contract shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such Executory Contract.

7.3 *Indemnification*. On and as of the Effective Date, the Indemnification Provisions will be assumed and irrevocable and will survive the effectiveness of this Plan, and the Reorganized Debtor's governance documents will provide for the indemnification, defense, reimbursement, exculpation, and/or limitation of liability of and advancement of fees and expenses to the Debtor's and the Reorganized Debtor's current and former directors, officers, employees, and agents to the fullest extent permitted by law and at least to the same extent as the certificate of incorporation, bylaws, or similar organizational documents of the Debtor as of the Petition Date, against any claims or Causes of Action whether direct or derivative, liquidated or unliquidated, fixed, or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted. The Reorganized Debtor shall not amend and/or restate its certificate of incorporation, bylaws, or similar organizational document before or after the Effective Date to terminate or materially adversely affect (1) the Reorganized Debtor's obligations

23

referred to in the immediately preceding sentence or (2) the rights of such managers, directors, officers, employees, or agents referred to in the immediately preceding sentence. Notwithstanding anything to the contrary herein, the Reorganized Debtor shall not be required to indemnify the Debtor's managers, directors, officers, or employees for any claims or Causes of Action for which indemnification is barred under applicable law, the Debtor's organizational documents, or applicable agreements governing the Debtor's indemnification obligations.

7.4     *Full Release and Satisfaction*.  Assumption of any Executory Contract pursuant to this Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy related defaults, arising under any assumed Executory Contract at any time before the effective date of the assumption.

7.5     *Reservation of Rights*.  Nothing contained in this Plan or the Plan Supplement shall constitute an admission by the Debtor or the Reorganized Debtor that any such contract or lease is in fact an Executory Contract or that the Debtor or the Reorganized Debtor has any liability thereunder.

7.6     *Nonoccurrence of Effective Date*.  In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting unexpired leases under section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

## SECTION 8.  CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

8.1     *Conditions Precedent to Confirmation*.  Confirmation of this Plan shall not occur, and the Confirmation Order shall not be entered, until each of the following conditions precedent have been satisfied or waived pursuant to the provisions of this Plan:

(a)     The proposed Confirmation Order shall be in form and substance reasonably satisfactory in all respects to the Debtor, the Trustee and the Steering Committee; and

(b)     This Plan and the Plan Supplement, including any schedules, documents, supplements and exhibits thereto shall be, in form and substance, on the terms contemplated by the Plan Term Sheet.

8.2     *Conditions Precedent to the Effective Date*.  The Effective Date shall not occur until each of the following conditions precedent have been satisfied or waived pursuant to the provisions of this Plan:

(a)     The Bankruptcy Court shall have entered the Confirmation Order, in form and substance reasonably satisfactory to the Debtor, the Trustee, and the Steering Committee, and such Confirmation Order shall not be subject to any stay or an unresolved request for revocation under section 1144 of the Bankruptcy Code;

(b)    The Plan Support Agreement shall not have been terminated, and remains in full force and effect;

(c)    On the occurrence of the Effective Date, the conditions to effectiveness of the 2020 Bond Documents shall have been satisfied or waived and the Refinancing Transaction shall have closed pursuant to the terms of the Plan Support Agreement;

(d)    The Effective Date shall be no earlier than December 21, 2019.

(e)    All actions, documents, certificates, and agreements necessary to implement this Plan, including, without limitation, 2020 Bond Documents, shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws; and

(f)    All requisite governmental authorities and third parties shall have approved or consented, to the extent required, to all actions, documents, certificates, and agreements necessary to implement this Plan.

8.3    ***Waiver of Conditions***.  The conditions to confirmation and consummation of this Plan set forth herein may be waived in writing at any time by the Debtor, with the written consent of the Trustee, without notice to any other parties in interest or the Bankruptcy Court and without a hearing.

8.4    ***Effect of Failure of Conditions***.  If consummation of this Plan does not occur, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any claims by or Claims against the Debtor; (2) prejudice in any manner the rights of the Debtor, any Holders of Claims or Interests or any other Person; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtor, any Holders of Claims or Interests or any other Person in any respect.

## SECTION 9.  EFFECT OF CONFIRMATION

9.1    ***General.***  Under section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases and other benefits provided under this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved under this Plan.    The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that any such compromise or settlement is in the best interests of the Debtor, its Estate, and any Holders of Claims and Interests and is fair, equitable and reasonable.    Notwithstanding anything contained herein to the contrary, the allowance, classification and treatment of all Allowed Claims and Interests and their respective distributions (if any) and treatments hereunder, takes into account the relative priority and rights of the Claims and the Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or

25

otherwise. As of the Effective Date, any and all contractual, legal and equitable subordination rights, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or otherwise, relating to the allowance, classification and treatment of all Allowed Claims and Interests and their respective distributions (if any) and treatments hereunder, are settled, compromised, terminated and released pursuant hereto; *provided, however*, that nothing contained herein shall preclude any Person or Entity from exercising their rights under and consistent with the terms of this Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan. Notwithstanding the foregoing, any subordinated debt expressly provided for in this Plan or the 2020 Bond Documents shall remain subordinated to the extent provided for in such documents.

    9.2 ***Releases by the Debtor.*** Pursuant to section 1123(b) of the Bankruptcy Code and except as otherwise specifically provided in this Plan or the Plan Supplement, for good and valuable consideration, including the consummation of the transactions contemplated by this Plan, as of the Effective Date, each Released Party will be deemed released and discharged by each and all of the Debtor, the Reorganized Debtor, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any cause of action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtor, the Reorganized Debtor, or their Estates, as applicable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor, the Reorganized Debtor, or their Estates or affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, the Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between the Debtor and any Released Party, the Debtor's in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the Refinancing Transaction, this Plan, or any other restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan Support Agreement, or this Plan, the filing of the Chapter 11 Case, the pursuit of Confirmation of this Plan, the pursuit of consummation of this Plan, the administration and implementation of this Plan, including the issuance or distribution of securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than Claims or liabilities arising out of or relating to a Released Party's willful misconduct or intentional fraud as determined by a Final Order of the Bankruptcy Court; *provided* that any right to enforce this Plan and the Confirmation Order is not so released by this Section 9.2.

    The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether

directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released under the foregoing release. Notwithstanding the foregoing, nothing in this Section 9.2 shall or shall be deemed to prohibit the Debtor or the Reorganized Debtor from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtor or the Reorganized Debtor, unless otherwise expressly provided for in this Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, under Bankruptcy Rule 9019, of foregoing release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the foregoing release is: (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims released; (iii) in the best interest of the Debtor and its Estate; (iv) fair, equitable and reasonable; and (v) given and made after due notice and opportunity for hearing.

9.3 ***Releases by Holders of Claims***. **AS OF THE EFFECTIVE DATE, EXCEPT (I) FOR THE RIGHT TO ENFORCE THIS PLAN OR ANY RIGHT OR OBLIGATION ARISING UNDER THE PLAN SUPPLEMENTS THAT REMAIN IN EFFECT OR BECOME EFFECTIVE AFTER THE EFFECTIVE DATE OR (II) AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR CONFIRMATION ORDER, INCLUDING THE 2020 BOND DOCUMENTS, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, INCLUDING THE OBLIGATIONS OF THE DEBTOR UNDER THIS PLAN AND THE CONTRIBUTIONS OF THE RELEASED PARTIES TO FACILITATE AND IMPLEMENT THIS PLAN, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, THE RELEASED PARTIES SHALL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER, RELEASED, AND DISCHARGED BY (A) HOLDERS OF BOND CLAIMS WHO HAVE NOT ELECTED TO OPT-OUT OF THE RELEASES PROPOSED UNDER THIS PLAN AND (B) THE PARTIES TO THE PLAN SUPPORT AGREEMENT, FROM ANY AND ALL CLAIMS, INTERESTS OR CAUSES OF ACTION WHATSOEVER, WHETHER ACCRUED OR UNACCRUED, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING BEFORE THE EFFECTIVE DATE, AS OF THE EFFECTIVE DATE OR ARISING THEREAFTER, IN LAW, AT EQUITY, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF STATUTES (INCLUDING BUT NOT LIMITED TO THE FEDERAL OR STATE SECURITIES LAWS), OR OTHERWISE, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, OR OTHER OCCURRENCE OR CIRCUMSTANCES EXISTING OR TAKING PLACE PRIOR TO OR ON THE EFFECTIVE DATE ARISING FROM OR RELATED IN ANY WAY TO THE DEBTOR, THE DEBTOR'S REFINANCING AND THE TRANSACTIONS CONTEMPLATED THEREIN OR HEREIN, THE CHAPTER 11 CASE, THE NEGOTIATION, FORMULATION, PREPARATION OR CONSUMMATION OF THIS PLAN, THE PLAN SUPPORT AGREEMENT, THE DEFINITIVE DOCUMENTS, OR ANY RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS OR THE SOLICITATION OF VOTES WITH RESPECT TO THIS PLAN, PROVIDED THAT THE**

**RELEASED PARTIES SHALL NOT BE RELEASED FROM ANY ACT OR OMISSION THAT CONSTITUTES ACTUAL FRAUD, GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR A CRIMINAL ACT AS DETERMINED BY A FINAL ORDER.**

9.4 ***Exculpation***. To the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, obligations, suit, judgment, damage, demand, debt, right, cause of action, remedy, loss and liability for any Claim in connection with or arising out of the administration of the Chapter 11 Case, the negotiation and pursuit of the Plan Support Agreement, the Refinancing Transaction, this Plan, or the solicitation of votes for, or confirmation of, this Plan, the funding or consummation of this Plan, the occurrence of the Effective Date, the administration of this Plan or the property to be distributed under this Plan, the issuance of securities under or in connection with this Plan, or the transactions in furtherance of any of the foregoing, except for: (a) the liability of any entity that would otherwise result from the failure to perform or pay any obligation or liability under this Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with this Plan; or (b) the liability of any entity that would otherwise result from any such act or omission to the extent that such act or omission is determined to have constituted actual fraud, gross negligence, willful misconduct or a criminal act as determined by a Final Order.

9.5 ***Discharge of Claims and Interest.*** To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by this Plan or the Confirmation Order, effective as of the Effective Date, all consideration distributed under this Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims, Interests and Causes of Action of any kind or nature whatsoever against the Debtor or any of its Assets or properties, including any interest accrued on such Claims or Interests from and after the Petition Date, and regardless of whether any property shall have been abandoned by order of the Bankruptcy Court, distributed or retained under this Plan on account of such Claims, Interests or Causes of Action. Except as otherwise expressly provided by this Plan or the Confirmation Order, upon the Effective Date, the Debtor and its Estate shall be deemed discharged and released under and to the fullest extent provided under sections 524 and 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code. Such discharge shall void any judgment obtained against the Debtor or the Reorganized Debtor at any time, to the extent that such judgment relates to a discharged Claim.

9.6 ***Injunction***. **EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER, INCLUDING BUT NOT LIMITED TO ANY RIGHT ARISING UNDER OR RELATED TO THE 2020 BOND DOCUMENTS, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES ARE, TO THE FULLEST EXTENT PROVIDED UNDER SECTION 524 AND OTHER APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, PERMANENTLY ENJOINED FROM (I) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY SUIT, ACTION OR OTHER PROCEEDING; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY**

28

**JUDGMENT, AWARD, DECREE, OR ORDER; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (IV) ASSERTING A SETOFF OR RIGHT OF SUBROGATION OF ANY KIND; OR (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, IN EACH CASE ON ACCOUNT OF OR WITH RESPECT TO ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, EQUITY INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, SETTLED OR TO BE SETTLED OR DISCHARGED OR TO BE DISCHARGED UNDER THIS PLAN OR THE CONFIRMATION ORDER AGAINST ANY PERSON OR ENTITY SO RELEASED OR DISCHARGED (OR THE PROPERTY OR ESTATE OF ANY PERSON OR ENTITY SO RELEASED, DISCHARGED). ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASE UNDER SECTION 105 OR SECTION 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.**

9.7 ***Binding Nature of Plan.*** **ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THIS PLAN SHALL BIND, AND SHALL BE DEEMED BINDING UPON, THE DEBTOR, THE REORGANIZED DEBTOR, ANY AND ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTOR, ALL PERSONS AND ENTITIES THAT ARE PARTIES TO OR ARE SUBJECT TO THE SETTLEMENTS, COMPROMISES, RELEASES, DISCHARGES, AND INJUNCTIONS DESCRIBED IN THIS PLAN, EACH PERSON ACQUIRING PROPERTY UNDER THIS PLAN, ANY AND ALL NON-DEBTOR PARTIES TO EXECUTORY CONTRACTS WITH THE DEBTOR AND THE RESPECTIVE SUCCESSORS AND ASSIGNS OF EACH OF THE FOREGOING, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, AND NOTWITHSTANDING WHETHER OR NOT SUCH PERSON OR ENTITY (I) WILL RECEIVE OR RETAIN ANY PROPERTY, OR INTEREST IN PROPERTY, UNDER THIS PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASE OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THIS PLAN, AFFIRMATIVELY VOTED TO REJECT THIS PLAN OR IS CONCLUSIVELY PRESUMED TO REJECT THIS PLAN.**

9.8 ***Protection Against Discriminatory Treatment***. To the extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the United States Constitution, all Persons and Entities, including Governmental Units, shall not discriminate against the Reorganized Debtor or deny, revoke, suspend or refuse to renew a license, permit, charter, franchise or other similar grant to, condition such a grant to, discriminate with respect to such a grant, against the Reorganized Debtor, or another Person or Entity with whom the Reorganized Debtor has been associated, solely because the Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case but before the Debtor is granted or denied a discharge) or has not paid a debt that is dischargeable in the Chapter 11 Case.

9.9 ***Preservation of Privilege and Defenses***. No action taken by the Debtor or Reorganized Debtor in connection with this Plan shall be (or be deemed to be) a waiver of any privilege or immunity of the Debtor or Reorganized Debtor, as applicable, including any attorney-

client privilege or work-product privilege attaching to any documents or communications (whether written or oral).

9.10 **_Injunction Against Interference with Plan_**. Upon the Bankruptcy Court's entry of the Confirmation Order, all Holders of Claims and Interests, the Debtor, and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the Debtor's, the Reorganized Debtor's and their respective affiliates', employees', advisors', officers' and directors', and agents' implementation or consummation of this Plan.

9.11 **_Release of Liens_**. Except as otherwise provided in this Plan, the Confirmation Order, the 2020 Bond Documents, including to the extent the 2020 Bond Documents amend or restate the Original Bond Documents, or in any contract, instrument, release or other agreement or document created pursuant to this Plan, on the Effective Date and concurrently with, and conditioned upon, the applicable Distributions made pursuant to this Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released. Except as otherwise provided in this Plan, the Confirmation Order, the 2020 Bond Documents, including to the extent the 2020 Bond Documents amend or restate the Original Bond Documents, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Debtor's Estate shall be fully released on the Effective Date without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code.

## SECTION 10. MODIFICATION, REVOCATION OR WITHDRAWAL OF THIS PLAN

10.1 **_Modification and Amendments_**. This Plan or any exhibits thereto may be amended, modified, or supplemented by the Debtor with the consent of the Trustee in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code. In addition, after the Confirmation Date, the Debtor or the Reorganized Debtor may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes and effects of this Plan.

10.2 **_Effect of Confirmation on Modifications_**. Entry of the Confirmation Order shall mean that all modifications or amendments to this Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

10.3 **_Revocation or Withdrawal of this Plan_**. The Debtor reserves the right to, consistent with its fiduciary duties, revoke or withdraw this Plan before the Effective Date. If the Debtor revokes or withdraws this Plan, or if the Confirmation Date does not occur, then: (a) this Plan shall be null and void in all respects; (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts effected by this Plan, and any

document or agreement executed pursuant to this Plan, shall be deemed null and void; and (c) nothing contained in this Plan shall:  (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtor or any other Person; or (iii) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or any other Person.

## SECTION 11.  RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the  Chapter 11 Case and this Plan, including, but not limited to, jurisdiction to:

(a)    allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured or unsecured status or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount or allowance of Claims;

(b)    decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or this Plan;

(c)    resolve any matters related to:  (i) the assumption or rejection of any Executory Contract to which the Debtor is party or with respect to which the Debtor may be liable in any manner and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, and cure Claims, pursuant to section 365 of the Bankruptcy Code or any other matter related to such Executory Contract; (ii) any potential contractual obligation under any Executory Contract that is assumed; and (iii) any dispute regarding whether a contract or lease is or was executory or expired;

(d)    ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

(e)    adjudicate, decide or resolve any matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(f)    adjudicate, decide or resolve any matter involving the Reorganized Debtor;

(g)    adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(h)    issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation or enforcement of this Plan;

31

           (i)      resolve any cases, controversies, suits, disputes or Causes of Action with respect to the discharge, releases, injunctions, exculpations, indemnifications and other provisions contained in this Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions;

           (j)      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

           (k)      resolve any cases, controversies, suits, disputes or Causes of Action that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, any transactions or payments contemplated thereby, or any contract, instrument, release, indenture or other agreement or document relating to any of the foregoing;

           (l)      adjudicate any and all disputes arising from or relating to Distributions under this Plan;

           (m)      consider any modifications of this Plan, cure any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

           (n)      hear and determine all disputes involving the existence, nature or scope of the Debtor's discharge;

           (o)      enforce all orders previously entered by the Bankruptcy Court;

           (p)      hear any other matter not inconsistent with the Bankruptcy Code; and

           (q)      enter a final decree closing the Chapter 11 Case.

## SECTION 12.  MISCELLANEOUS PROVISIONS

12.1    ***Section 1125(e) Good Faith Compliance***.  As of and subject to the occurrence of the Confirmation Date, the Debtor and its Related Persons shall be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation.

12.2    ***Substantial Consummation***.  On the Effective Date, this Plan shall be deemed to be substantially consummated within the meaning set forth in section 1101 and pursuant to section 1127(b) of the Bankruptcy Code.

12.3    ***Closing of the Chapter 11 Case***.  The Reorganized Debtor shall, promptly after the full administration of the Chapter 11 Case, but by no later than March 31, 2020, file with

the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

12.4 **Plan Supplement**. Any exhibits or schedules not filed with this Plan may be contained in the Plan Supplement, if any, and the Debtor hereby reserves the right to file such exhibits or schedules as a Plan Supplement.

12.5 **Further Assurances**. The Debtor or the Reorganized Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan. The Debtor, the Reorganized Debtor and all Holders of Claims receiving Distributions pursuant to this Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

12.6 **Exhibits Incorporated**. All exhibits to this Plan, including the Plan Supplement, are incorporated into and are part of this Plan as if fully set forth herein.

12.7 **Inconsistency**. In the event of any inconsistency among this Plan, the Disclosure Statement and any exhibit to the Disclosure Statement, the provisions of this Plan shall govern.

12.8 **No Admissions**. If the Effective Date does not occur, this Plan shall be null and void in all respects, and nothing contained in this Plan shall (a) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor, (b) prejudice in any manner the rights of the Debtor or any other party in interest, or (c) constitute an admission of any sort by the Debtor or other party in interest.

12.9 **Reservation of Rights**. Except as expressly set forth herein, this Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order and the Effective Date has occurred. None of this Plan, any statement or provision contained in this Plan or any action taken or not taken by the Debtor with respect to this Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the Holders of Claims or Interests before the Effective Date.

12.10 **Successors and Assigns**. The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries or guardian, if any, of each Person.

12.11 **Entire Agreement**. On the Effective Date, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

12.12 **Notices**. All notices, requests, and demands to or upon the Debtor in the Chapter 11 Case shall be in writing and, unless otherwise provided herein, shall be deemed to have been duly given or made when actually delivered or, if by facsimile transmission, when received and telephonically confirmed to the below recipients:

TARRANT COUNTY SENIOR LIVING CENTER, INC.
c/o Ankura Consulting Group LLC
Attention: Louis E. Robichaux IV
15950 Dallas Parkway
Dallas, Texas 75248
Telephone: (214) 200-3689
Facsimile: (214) 200-3686
E-mail: louis.robichaux@ankura.com

with copies to:

DLA PIPER LLP (US)
Attention:  Thomas R. Califano
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone:  (212) 335-4500
Facsimile:  (212) 335-4501
E-mail: thomas.califano@dlapiper.com

- and -

DLA PIPER LLP (US)
Attention:  Rachel Nanes
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131
Telephone:  (305) 423-8563
Facsimile:  (305) 675-8206
E-mail: rachel.nanes@dlapiper.com

- and -

DLA PIPER LLP (US)
Attention:  Andrew B. Zollinger
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 743-4500
Facsimile: (214) 743-4545
E-mail: andrew.zollinger@dlapiper.com

All notices and requests to Persons holding any Claim or Interest in any Class shall be sent to them at their last known address or to the last known address of their attorney of record in the  Chapter 11 Case.  Any such Holder of a Claim or Interest may designate in writing any other address for purposes of this section, which designation will be effective upon receipt by the Debtor.

12.13  *Severability*.  If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it

34

valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.14 ***Governing Law***. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of this Plan and the transactions consummated or to be consummated in connection therewith.

12.15 ***Request for Confirmation***. The Debtor requests entry of the Confirmation Order under section 1129(a) of the Bankruptcy Code and, to the extent necessary, section 1129(b) of the Bankruptcy Code.

Dated: December 17, 2019

Respectfully submitted,

TARRANT COUNTY SENIOR LIVING CENTER, INC.

By: */s/ Louis E. Robichaux IV*
      Name: Louis E. Robichaux IV
      Title: Chief Restructuring Officer

EAST\171093229.1