

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed December 20, 2019**

**United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **CHAPTER 11** |
| **TARRANT COUNTY SENIOR LIVING** | § | |
| **CENTER, INC.**[1] | § | **CASE NO. 19-33756 (SGJ)** |
| | § | |
| Debtor. | § | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**
**(I) APPROVING THE DEBTOR'S SOLICITATION PROCEDURES**
**AND DISCLOSURE STATEMENT; AND (II) CONFIRMING THE DEBTOR'S**
**FIRST AMENDED PREPACKAGED PLAN OF REORGANIZATION**
**PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

WHEREAS, Tarrant County Senior Living Center, Inc., as debtor and debtor-in-possession in the above-captioned case (the "Debtor"), having proposed and filed with the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") (i) the *Debtor's First Amended Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code,* dated as of December 17, 2019 [Docket No. 105] (as further modified, amended, and/or supplemented from time to time, including as

---

[1] The last four digits of the Debtor's federal tax identification number are 8602.

modified herein, the "Plan"), a copy of which is annexed hereto as **Exhibit A**; and (ii) that certain related *Disclosure Statement for Debtor's Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code,* dated as of September 30, 2019 [Docket No. 18] (the "Disclosure Statement")[2]; and

WHEREAS, on September 30, 2019, the Debtor caused its solicitation, claims, and voting agent, Epiq Corporate Restructuring, LLC ("Epiq"), to distribute packages containing the Disclosure Statement,[3] ballots with voting instructions, and a cover letter (the "Solicitation Package") to the Holders of Bond Claims as of the Voting Record Date, as the only Holders of Claims entitled to vote to accept or reject the Plan with a voting deadline of 5:00 p.m., prevailing Central Time, on October 31, 2019 (the "Voting Deadline"); and

WHEREAS, as reflected in the *Declaration of Jane Sullivan on Behalf of Epiq Corporate Restructuring, LLC Regarding Service of Solicitation Packages and Voting and Tabulation of Ballots Cast on Debtor's Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 19] (the "Voting Certification"), of the Holders of Bond Claims that voted, 94.2% in number and 99.7% in dollar amount voted in favor of the Plan; and

WHEREAS, on November 5, 2019 (the "Petition Date"), the Debtor commenced this Chapter 11 Case by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"); and

WHEREAS, on the Petition Date, the Debtor filed, among other documents, the (i) Plan; (ii) Disclosure Statement; (iii) *Motion of the Debtor for Entry of an Order (I) Scheduling*

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan or Disclosure Statement.

[3] Attached to the Disclosure Statement as exhibits are the Plan, Plan Support Agreement, 2020 Bond Documents, Financial Projections, Liquidation Analysis, and Form of Opinion of Bond Counsel.

*Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Prepackaged Plan of Reorganization; (II) Fixing Related Objection Deadlines and Approving Notice Procedures; (III) Approving Prepetition Solicitation Procedures; (IV) Conditionally Directing the United States Trustee Not To Convene Section 341 Meeting of Creditors; and (V) Granting Related Relief* [Docket No. 15], requesting approval of, among other things, the Debtor's prepetition solicitation procedures described therein (the "<u>Solicitation Procedures</u>") with respect to the Plan, including the form of ballots used to solicit votes accepting or rejecting the Plan (the "<u>Ballots</u>"); (iv) Voting Certification, detailing, among other things, the results of the Plan voting process; and (v) *Declaration of Louis E. Robichaux IV in Support of Chapter 11 Petition and First Day Pleadings* [Docket No. 16] (the "<u>First Day Declaration</u>") describing, among other things, the reasons for and objectives of this Chapter 11 Case; and

WHEREAS, on November 8, 2019, the Bankruptcy Court entered the *Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Prepackaged Plan of Reorganization; (II) Fixing Related Objection Deadlines and Approving Notice Procedures; and (III) Granting Related Relief* [Docket No. 44] (the "<u>Combined Hearing Order</u>"), which, among other things, set the date and time for the hearing to consider approval of the Disclosure Statement and confirmation of the Plan (the "<u>Confirmation Hearing</u>"), established the deadline for filing objections to the Plan and the Disclosure Statement (the "<u>Objection Deadline</u>"), and approved the *Notice of (A) Commencement of Prepackaged Chapter 11 Bankruptcy Case, (B) Combined Hearing on the Disclosure Statement, Confirmation of the Prepackaged Chapter 11 Plan, and Related Matters, (C) Objection Deadlines, and Summary of the Debtor's Prepackaged Chapter 11 Plan* (the "<u>Combined Hearing Notice</u>") and *Notice of (A) Commencement of Prepackaged Chapter 11 Case, (B) Combined Hearing on the Disclosure*

3

*Statement and Confirmation of Plan and (C) Deadline for Objecting to Confirmation* (the "Publication Notice"); and

WHEREAS, on November 12, 2019 and November 15, 2019, the Debtor caused the Combined Hearing Notice to be served and the Publication Notice to be published in the *Fort Worth Star-Telegram*, as evidenced by the *Affidavit of Service* [Docket No. 52] and *Affidavit of Publication* [Docket No. 67] (collectively, the "Combined Notice Affidavits"), respectively; and

WHEREAS, on December 17, 2019, the Debtor filed the *Declaration of Louis E. Robichaux IV in Support of (I) Approval of the Debtor's Solicitation Procedures and Disclosure Statement; and (II) Confirmation of the Debtor's First Amended Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, [Docket No. 109] (the "Robichaux Declaration"), and *Debtor's Memorandum of Law in Support of (I) Approval of Debtor's Solicitation Procedures and Disclosure Statement, and (II) Confirmation of the Debtor's First Amended Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 110] (the "Memorandum of Law") in support of approval of the Disclosure Statement and confirmation of the Plan; and

WHEREAS, due notice of the Confirmation Hearing has been given to Holders of Claims against and Interests in the Debtor and other parties in interest in compliance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "Local Rules"), and the Combined Hearing Order as evidenced by the Combined Notice Affidavits and such notice is sufficient under the circumstances and no further notice is required; and

WHEREAS, the Bankruptcy Court having held the Confirmation Hearing on December

4

19, 2019, to consider, among other things, the adequacy of the Disclosure Statement and confirmation of the Plan, and having noted that there were no objections to the Disclosure Statement or Plan; and

NOW, THEREFORE, based upon the Bankruptcy Court's consideration of the entire record of this Chapter 11 Case and the Confirmation Hearing, including (i) the Disclosure Statement, Plan, and Voting Certification, (ii) the Debtor's Memorandum of Law, (iii) the Robichaux Declaration, and (iv) the Combined Notice Affidavits; and no objections to the Plan or Disclosure Statement having been filed or asserted; and upon the arguments of counsel and the evidence adduced at the Confirmation Hearing; and the Bankruptcy Court having found that the Disclosure Statement should be approved and the Plan should be confirmed as reflected by the Bankruptcy Court's rulings made herein and at the Confirmation Hearing; and after due deliberation and sufficient cause appearing therefor, the Bankruptcy Court hereby **FINDS, DETERMINES, AND CONCLUDES** that:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A. <u>Findings and Conclusions</u>. The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B. <u>Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))</u>. The Bankruptcy Court has jurisdiction over the Debtor's Chapter 11 Case pursuant to 28 U.S.C. §§ 157 and 1334. Approval of the Disclosure Statement and confirmation of the Plan are core

proceedings pursuant to 28 U.S.C. § 157(b) and the Bankruptcy Court has jurisdiction to enter a final order with respect thereto. Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtor is an eligible debtor under section 109 of the Bankruptcy Code. The Debtor is a proper plan proponent under section 1121(a) of the Bankruptcy Code.

C. <u>Judicial Notice</u>. The Bankruptcy Court takes judicial notice of the docket of this Chapter 11 Case maintained by the Clerk of the Bankruptcy Court and/or its duly appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of this Chapter 11 Case.

D. <u>Burden of Proof</u>. The Debtor, as proponent of the Plan, has the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence. The Debtor has met its burden with respect to each applicable element of section 1129 of the Bankruptcy Code.

E. <u>Chapter 11 Petition</u>. On the Petition Date, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court. The Debtor continued as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No statutory committee, trustee or examiner has been appointed in this Chapter 11 Case.

F. <u>Notice</u>. As evidenced by the Combined Notice Affidavits and Voting Certification, due, timely, proper, and adequate notice of the Plan, Disclosure Statement, and the Confirmation Hearing, together with the Voting Deadline and Objection Deadline, has been provided to: (i) the Office of the United States Trustee for the Northern District of Texas (the "<u>United States Trustee</u>"), (ii) the Debtor's twenty-three (23) largest unsecured creditors as of the Petition Date, (iii) counsel to the Trustee, (iv) those persons who have formally appeared in this

Chapter 11 Case and requested service pursuant to Bankruptcy Rule 2002; (v) the Internal Revenue Service; (vi) all other applicable government agencies to the extent required by the Bankruptcy Rules or the Local Rules; and (vii) all parties in interest listed on the Debtor's creditor matrix. Further, the Publication Notice was published in the *Fort Worth Star-Telegram* on November 15, 2019 in accordance with the Combined Hearing Order and Bankruptcy Rule 2002(l). Such notice was adequate and sufficient based upon the facts and circumstances of this Chapter 11 Case and pursuant to section 1128 of the Bankruptcy Code, Bankruptcy Rules 2002 and 3020, and other applicable law and rules, and no other or further notice is or shall be required.

### Disclosure Statement, Solicitation, and Modifications to the Plan

G. <u>Disclosure Statement</u>. The Disclosure Statement contains (i) sufficient information of a kind consistent with the disclosure requirements of all applicable nonbankruptcy laws, rules, and regulations, including the Securities Act (to the extent applicable), and (ii) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtor, the Plan, and the transactions contemplated therein, and is approved in all respects.

H. <u>Solicitation</u>. Prior to commencing this Chapter 11 Case, the Debtor caused the Solicitation Package to be transmitted and served in compliance with sections 1125(g) and 1126(b) of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable provisions in the Bankruptcy Code, and all other applicable rules, law, and regulations applicable to such solicitation. The Ballots used to solicit votes to accept or reject the Plan from Holders of Bond Claims in Class 3, which are the only Holders of Claims entitled to vote to accept or reject the Plan (the "<u>Voting Class</u>"), adequately addressed the particular needs of this Chapter 11 Case and were appropriate for Holders in the Voting Class to accept or reject the Plan.

7

I.       As set forth in the Voting Certification, on September 30, 2019, the Solicitation Package was transmitted to and served on the Holders in the Voting Class. The instructions on the Ballots advised the Voting Class that for the Ballots to be counted, the Ballots must be properly executed, completed, and delivered to Epiq so as to be actually received no later than the Voting Deadline. The period during which the Debtor solicited Holders of Bond Claims in the Voting Class was a reasonable period of time for such Holders to make an informed decision to accept or reject the Plan.

J.       The Debtor was not required to solicit votes from the Holders of Class 1—Other Priority Claims, Class 2—Other Secured Claims, Class 4—General Unsecured Claims, Class 5—Preserved Intercompany Claims, and Class 7—Interests in Stayton (collectively, the "Deemed Accepting Classes") as each such Class is Unimpaired under the Plan and thus presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Additionally, the Debtor was not required to solicit votes from the Holders of Class 6—Intercompany Claims (the "Deemed Rejecting Class") as such Class is Impaired under the Plan and deemed to have rejected the Plan.

K.       No Other or Further Notice or Solicitation Required. As evidenced by the Voting Certification and Combined Notice Affidavits, the transmittal and service of the Plan, the Disclosure Statement, and the Ballots were adequate and sufficient under the circumstances, and all parties required to be given notice of the Confirmation Hearing (including the Objection Deadline) have been given due, proper, timely, and adequate notice in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law, and such parties have had sufficient opportunity to appear and be heard with respect thereto. The solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and

8

satisfactory based upon the circumstances of this Chapter 11 Case, and was in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law. No other or further notice or re-solicitation is required.

L. <u>Good Faith Solicitation</u>. Based on the record before the Bankruptcy Court in this Chapter 11 Case, the Debtor and its successors, predecessors, partners, representatives, control persons, members, officers, directors, employees, agents and their respective attorneys and other advisors (i) have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of votes on the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and (ii) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan and, therefore, are not, and on account of any such offer, issuance, and solicitation will not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of the securities under the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and, to the extent such parties are listed therein, the exculpation provisions set forth in section 9.4 of the Plan.

M. <u>Voting</u>. As evidenced by the Voting Certification, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Plan, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law.

N.     Modifications to the Plan.  As a result of the anticipated timing of the Effective

Date of the Plan, the Debtor has modified the Plan to replace all references to the "2019 Bond

Documents" and "Series 2019 Bonds" with the "2020 Bond Documents" and "Series 2020

Bonds," respectively, in addition to certain other miscellaneous modifications reflected in the

*Notice of Filing Blackline Comparison of Debtor's First Amended Plan of Reorganization*

*Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 106] (collectively, the

"Modifications").  In accordance with Bankruptcy Rule 3019, the Modifications do not require

additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes

under section 1126 of the Bankruptcy Code, and they do not require that the Holders of Claims

and Interests be afforded an opportunity to change previously cast votes on the Plan.

Accordingly, the Plan, as modified by the Modifications, is properly before the Bankruptcy

Court and all votes cast with respect to the Plan shall be binding.

**Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

O.     Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).  The Plan

complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy

Rule 3016, the Plan is dated, identifies the Debtor as the plan proponent, and clearly identifies

the injunction proposed under the Plan, thereby satisfying section 1129(a)(1) of the Bankruptcy

Code.

i.     Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).  With the exception of

Administrative Expense Claims, Accrued Professional Compensation Claims, and Priority Tax

Claims which need not be classified, section 3 of the Plan classifies the Classes of Claims against

and Interests in the Debtor.  The Claims and Interests placed in each Class are substantially

similar to the other Claims and Interests, as the case may be, in each such Class.  Valid business,

factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and the Plan does not unfairly discriminate between Holders of Claims and Interests in each Class or between Classes. Accordingly, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

ii.     <u>Unimpaired Classes Specified (11 U.S.C. § 1123(a)(2))</u>. Sections 3 and 4 of the Plan specifies which Classes of Claims and Interests are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

iii.     <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>. Sections 3 and 4 of the Plan specify which Classes of Claims and Interests are Impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code and clearly specify the treatment of the Claims and Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

iv.     <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>. The Plan provides for the same treatment for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to less favorable treatment for such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

v.     <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>. The Plan provides adequate and proper means for the implementation of the Plan, including, without limitation, (a) the execution and delivery of appropriate agreements or other documents containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms

of the Plan; (c) the filing of appropriate documents with the appropriate governmental authorities under applicable law; and (d) all other actions that the Debtor or the Reorganized Debtor, as applicable, determines are necessary or appropriate to implement the Refinancing Transaction.

vi. <u>Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C. § 1123(a)(6))</u>. The Plan does not provide for the issuance of nonvoting equity securities, therefore section 1123(a)(6) of the Bankruptcy Code is inapplicable to this Chapter 11 Case.

vii. <u>Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))</u>. Except as stated below, as of the Effective Date, the members of the board of directors and officers of the Debtor as of the Petition Date shall remain in their current capacities as director and officers of the Reorganized Debtor, in each case subject to the ordinary rights and powers of the board of directors to remove or replace the officers in accordance with the Reorganized Debtor's organizational documents and any applicable employment agreements that are assumed pursuant to this Plan. Upon the Effective Date, Louis E. Robichaux IV, as the Chief Restructuring Officer, and Joe Friedman, as the independent director appointed in connection with the Refinancing Transaction, will no longer serve in such capacities. From and after the Effective Date, each officer of the Reorganized Debtor shall serve pursuant to the terms of the Reorganized Debtor's charters and bylaws or other formation and constituent documents, and applicable laws of the Reorganized Debtor's jurisdiction of formation, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

viii. <u>Earnings from Personal Services (11 U.S.C. § 1123(a)(8))</u>. Section 1123(a)(8) of the Bankruptcy Code applies only to individual debtors and is not applicable to this Chapter 11 Case.

ix.     <u>Impairment/Unimpairment of Classes of Claims and Interests (11 U.S.C. § 1123(b)(1))</u>.  As permitted by section 1123(b)(1) of the Bankruptcy Code, pursuant to sections 3 and 4 of the Plan, Claims or Interests in the Voting Class and Deemed Rejecting Class are Impaired and Claims or Interests in the Deemed Accepting Classes are Unimpaired.

x.     <u>Assumption and Rejection (11 U.S.C. § 1123(b)(2))</u>.  Section 7 of the Plan governs the assumption of Executory Contracts and unexpired leases pursuant to sections 363 and 365 of the Bankruptcy Code, as applicable, thereby satisfying section 1123(b)(2) of the Bankruptcy Code.

xi.     <u>Settlement/Retention of Claim or Interests (11 U.S.C. § 1123(b)(3))</u>.  Section 6.13 of the Plan provides for the retention of Causes of Action not expressly settled or released under the Plan.  Thus, the Plan satisfies the requirements of section 1123(b)(3) of the Bankruptcy Code.

xii.     <u>Modification of Rights (11 U.S.C. § 1123(b)(5))</u>.  As permitted by section 1123(b)(5) of the Bankruptcy Code, the Plan modifies the rights of Holders of Claims and Interests in the Voting Class and Deemed Rejecting Class.  The Plan leaves unaffected the rights of Holders of Claims in the Deemed Accepting Classes.

xiii.     <u>Additional Plan Provisions (11 U.S.C. § 1123(b)(6))</u>.  As permitted by section 1123(b)(6) of the Bankruptcy Code, the Plan includes other appropriate provisions not inconsistent with the applicable provisions of the Bankruptcy Code, including, without limitation, certain release, exculpation, and injunction provisions in section 9 of the Plan.  Based upon the facts and circumstances of this Chapter 11 Case, the release, exculpation, and injunction provisions in the Plan are integral and critical parts of the Plan, and the Released Parties and Exculpated Parties have relied on the efficacy and conclusive effects of such releases and injunctions when making concessions and exchanging consideration in connection with this

13

Chapter 11 Case and the Plan. Such release, exculpation, and injunction provisions in section 9 of the Plan are: (i) in exchange for the good, valuable, and reasonably equivalent consideration provided by the Released Parties; (ii) in the best interests of the Debtor, its Estate, and its Creditors; (iii) fair, equitable, and reasonable; and (iv) a bar to any of the Releasing Parties as set forth in the Plan asserting any Claims or Causes of Action released pursuant to the Plan. Accordingly, based upon the record of this Chapter 11 Case, the representations of the parties, and/or the evidence proffered, adduced, and/or presented at the Confirmation Hearing, the Bankruptcy Court finds that the release, exculpation, and injunction provisions set forth in section 9 of the Plan are consistent with the Bankruptcy Code and applicable law and are appropriate under the circumstances.

xiv.     Sale of Exempt Property (11 U.S.C. § 1123(c)). The Debtor is not an individual. Accordingly, section 1123(c) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

xv.     Cure of Defaults (11 U.S.C. § 1123(d)). Except as otherwise provided in the Plan, each of the Executory Contracts of the Debtor, including the Residency Agreements, shall be deemed assumed as of the Effective Date, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, pursuant to section 365 of the Bankruptcy Code. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

P.     The Debtor's Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtor, as the plan proponent, has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Combined Hearing Order, and other applicable law in transmitting the Plan, the Disclosure Statement, the Ballots, and related documents and notices and in soliciting and tabulating the votes on the Plan. Accordingly, the Plan satisfies the requirements of section 1129(a)(2) of the Bankruptcy Code.

14

Q. Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Debtor has proposed the Plan, including all documents necessary to effectuate the Plan, and the transactions contemplated by the Plan in good faith and not by any means forbidden by law, thereby satisfying the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtor's good faith is evident from the facts and record of this Chapter 11 Case, the Disclosure Statement, and the record of the Confirmation Hearing and other proceedings held in this Chapter 11 Case. The Debtor's Chapter 11 Case was filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtor to implement the Refinancing Transaction, reorganize, and successfully emerge from chapter 11. The Plan (including all documents necessary to effectuate the Plan), the Plan Support Agreement, and the 2020 Bond Documents were negotiated in good faith and at arm's length among the Debtor, SQLC, Lifespace, the Trustee, and the Steering Committee. Additionally, the Refinancing Transaction embodied in the Plan, reflects the best possible compromise that could be reached given the facts and circumstances surrounding the Debtor and this Chapter 11 Case. Further, the Plan's classification, exculpation, release, and injunction provisions are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code and applicable case law in the Fifth Circuit, have been negotiated in good faith and at arms' length, are integral to the Plan, and supported by valuable consideration.

R. Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Any payments made or promised by the Debtor for services or for costs and expenses incurred in connection with this Chapter 11 Case, or in connection with the Plan and incident to this Chapter 11 Case, have been approved by, or are subject to approval of, the Bankruptcy Court as reasonable. Accordingly, the Plan satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

S.       Directors, Officers, and Trustees (11 U.S.C. § 1129(a)(5)).    The Plan satisfies section 1129(a)(5) of the Bankruptcy Code as the identity of the Debtor's board of directors have been fully disclosed in the Debtor's chapter 11 petition and at the Confirmation Hearing.

T.       No Rate Changes (11 U.S.C. § 1129(a)(6)).    The Plan does not provide for any rate changes over which a governmental regulatory commission has jurisdiction.    Accordingly, section 1129(a)(6) of the Bankruptcy Code is not applicable to this Chapter 11 Case.

U.       Best Interest of Creditors (11 U.S.C. § 1129(a)(7)).    Each Holder of an Impaired Claim or Interest (i) has accepted the Plan, (ii) will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date, or (iii) has agreed to receive less favorable treatment.    Therefore, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

V.       Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).    The Deemed Rejecting Class is Impaired under the Plan and is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.    As set forth herein, and pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed notwithstanding the fact that the Deemed Rejecting Class is Impaired under the Plan and is deemed to have rejected the Plan.

As evidenced by the Voting Certification, Class 3 (Bond Claims) voted to accept the Plan in accordance with sections 1126(b) and (c) of the Bankruptcy Code, and such Class does not include insiders of the Debtor (as that term is defined in section 101(31) of the Bankruptcy Code).

16

W.  Treatment of Administrative Expense Claims and Priority Claims (11 U.S.C. § 1129(a)(9)).  The treatment of Claims under the Plan of the type specified in section 507(a)(1) through 507(a)(8) of the Bankruptcy Code, if any, complies with the provisions of section 1129(a)(9) of the Bankruptcy Code.

X.  Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).  As evidenced by the Voting Certification, section 1129(a)(10) of the Bankruptcy Code is satisfied as the Voting Class has accepted the Plan, determined without including any acceptances of the Plan by any insider.

Y.  Feasibility (11 U.S.C. § 1129(a)(11)).  The information in the Disclosure Statement, the Robichaux Declaration, and the evidence proffered or adduced at or prior to the Confirmation Hearing (a) is reasonable, persuasive and credible, (b) has not been controverted by other evidence, and (c) establishes that the Plan is feasible and that there is a reasonable prospect that the Debtor will be able to meet its financial obligations under the Plan and that confirmation of the Plan is not likely to be followed by the liquidation or need for further financial reorganization of the Debtor, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

Z.  Payment of Fees (11 U.S.C. § 1129(a)(12)).  As provided in section 2.4 of the Plan, all fees payable under section 1930 of title 28 of the United States Code have either been paid or will be paid under the Plan, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.  Allowed Administrative Expense Claims of the United States Trustee for statutory fees under 28 U.S.C. § 1930 shall be paid on the Effective Date and thereafter, as such fees may thereafter accrue and be due and payable, by the Debtor in accordance with the applicable schedule for payment of such fees

AA.  <u>Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>.  The Debtor has no obligations for retiree benefits as that term is defined in section 1114 of the Bankruptcy Code, thus the requirements of section 1129(a)(13) of the Bankruptcy Code are not applicable.

BB.  <u>No Domestic Support Obligations (11 U.S.C. § 1129(a)(14))</u>.  The Debtor is not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

CC.  <u>Debtor Is Not An Individual (11 U.S.C. § 1129(a)(15))</u>.  The Debtor is not an individual.  Accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

DD.  <u>Applicable Non-Bankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16))</u>. There are no transfers of property contemplated under the Plan.  Accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in this Chapter 11 Case

EE.  <u>No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b))</u>.  Based upon the evidence proffered, adduced, and presented by the Debtor at the Confirmation Hearing, in the Disclosure Statement, and in the Robichaux Declaration, the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Class as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code, because no Holder of any Claim or Interest that is junior to such Class will receive or retain any property under the Plan on account of such junior Claim or Interest, and no Holder of a Claim in a Class senior to such Classes is receiving more than 100% recovery on account of its Claim.  Thus, the Plan may be confirmed notwithstanding the deemed rejection of the Plan by the Deemed Rejecting Class.

FF. <u>Only One Plan (11 U.S.C. § 1129(c))</u>. The Plan is the only plan being confirmed in this Chapter 11 Case. Thus, the Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code.

GG. <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933. Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

HH. <u>Exemption from Transfer Tax (11 U.S.C. § 1146(a))</u>. All transactions contemplated by the Plan are not subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, sales or use tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment.

II. <u>Satisfaction of Conditions Precedent to the Effective Date</u>. Each of the conditions precedent to the Effective Date, as set forth in section 8.2 of the Plan, has been or is reasonably likely to be satisfied in accordance with section 8.2 of the Plan.

JJ. <u>Modifications of the Plan (11 U.S.C. § 1127)</u>. The Modifications do not constitute changes that materially and adversely change the treatment of any Claims or Interests. Accordingly, the Modifications comply in all respects with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and none of the Modifications requires additional disclosure or resolicitation of votes on the Plan. Under Bankruptcy Rule 3019(a), all Creditors that previously accepted the Plan are deemed to have accepted the Plan as modified. The Plan as modified shall constitute the Plan submitted for confirmation.

KK.    <u>Implementation</u>.  All documents and agreements necessary to implement the Plan have been negotiated in good faith and at arm's length and are in the best interests of the Debtor, and shall, upon completion of documentation and execution, and subject to the occurrence of the Effective Date, be valid, binding, and enforceable agreements and shall not be in conflict with any federal or state law.

LL.    <u>Injunction, Exculpation, and Releases</u>.  The Bankruptcy Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the injunction, exculpation, and releases set forth in Section 9 and elsewhere in the Plan and this Confirmation Order.  Section 105(a) of the Bankruptcy Code permits issuance of injunction and approval of the releases and exculpations set forth in Section 9 and elsewhere in the Plan and this Confirmation Order, if, as has been established here based upon the record in this Chapter 11 Case and the evidence presented in the Robichaux Declaration and the Confirmation Hearing, such provisions (i) were integral to the agreement among the various parties in interest and are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtor's Estate, (iii) are fair, equitable, and reasonable, and (iv) are in the best interests of the Debtor, its Estate, and parties in interest.

Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the releases, exculpation, and injunction set forth in the Plan are fair, equitable, reasonable, and in the best interests of the Debtor, its Estate and Creditors.  The Robichaux Declaration and the record of the Confirmation Hearing and this Chapter 11 Case are sufficient to support the releases, exculpation, and injunction provided for in section 9 of the Plan.  Accordingly, based upon the record of this Chapter 11 Case, the representations of the parties, and/or the evidence proffered, adduced, and/or presented in the Robichaux Declaration and the Confirmation

20

Hearing, the Bankruptcy Court finds that the injunction, exculpation, and releases set forth in section 9 of the Plan are consistent with the Bankruptcy Code and applicable law. The failure to implement the injunction, release, and exculpation provisions of the Plan would seriously impair the Debtor's ability to confirm the Plan.

MM. <u>Satisfaction of Confirmation Requirements</u>. Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

## <u>ORDER</u>

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

1. <u>Findings of Fact and Conclusions of Law</u>. The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though more fully set forth herein.

2. <u>Notice of the Confirmation Hearing</u>. Notice of the Confirmation Hearing complied with the terms of the Combined Hearing Order, was appropriate and satisfactory based upon the circumstances of this Chapter 11 Case, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

3. <u>Adequacy of Disclosure Statement</u>. The Disclosure Statement (i) contains adequate information of a kind that is consistent with the disclosure requirements of applicable nonbankruptcy law, including the Securities Act, (ii) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtor, the Plan, and the transactions contemplated therein, and (iii) is approved in all respects.

4.  _Solicitation and Tabulation_.  The solicitation and tabulation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of this Chapter 11 Case, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable nonbankruptcy law. The offering, issuance, and distribution of Series 2020 Bonds issued under the Plan shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act under section 3(a)(2) and 3(a)(4) of the Securities Act of 1933, as amended and under section 1145(a)(1) of the Bankruptcy Code.  Any and all Series 2020 Bonds issued under the Plan will be freely tradable under the Securities Act by the recipients thereof.  To the extent that the Debtor's solicitation was deemed to constitute an offer of new securities, such solicitation was exempt from registration pursuant to section 4(a)(2) and Regulation D of the Securities Act. Specifically, section 4(a)(2) and Regulation D of the Securities Act create an exemption from the registration requirements under the Securities Act for transactions not involving a "public offering." 15 U.S.C. § 77d(a)(2). The Debtor has complied with the requirements of section 4(a)(2) and Regulation D of the Securities Act as the prepetition solicitation of acceptances was made in a manner that would not constitute a public offering. The solicitation was made only to holders of Class 3—Bond Claims, and the such holders were understood to be sophisticated investors as of the Voting Record Date. _See_ Regulation D, 17 C.F.R.

5.  _Plan Modifications_.  The Modifications to the Plan meet the requirements of sections 1127(a) and (c) of the Bankruptcy Code, such modifications do not materially and adversely affect the treatment of the Claim of any Creditor of Interest Holder within the meaning of Bankruptcy Rule 3019(a), and no further solicitation or voting is required.  The Plan is hereby amended to include the Modifications.

6.      Confirmation of the Plan.  The Plan and each of its provisions and exhibits shall be, and hereby are, CONFIRMED pursuant to section 1129 of the Bankruptcy Code.  Each provision of the Plan is authorized and approved and shall have the same validity, binding effect, and enforceability as every other provision of the Plan.  The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.  The failure specifically to describe, include, or refer to any particular article, section, or provision of the Plan or any related document in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan and all related documents be approved and confirmed in their entirety.

7.      Plan Implementation.  In accordance with section 1142 of the Bankruptcy Code and any provisions of the business corporation law of any applicable jurisdiction, no further action by the Bankruptcy Court or the member, managers, officers, or directors of the Debtor or Reorganized Debtor is required for the Debtor or Reorganized Debtor to, as of the Effective Date: (i) take any and all actions necessary or appropriate to implement, effectuate, and consummate the Plan, the Refinancing Transaction, the 2020 Bond Documents, this Confirmation Order, and the transactions contemplated thereby or hereby, including the transactions identified in section 6 of the Plan, and (ii) execute and deliver, adopt or amend, as the case may be, any contracts, instruments, releases, agreements, and documents necessary to implement, effectuate, and consummate the Plan and the Refinancing Transaction, including those contracts, instruments, releases, agreements, and documents identified in section 6 of the Plan.

8.      Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan including (1) the assumption of Executory Contracts; (2) the execution of and entry into

23

the 2020 Bond Documents; (3) the issuance and distribution of the Series 2020 Bonds as provided in the Plan; and (4) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the transactions contemplated by the Plan, shall be effective on the Effective Date pursuant to this Confirmation Order, without further notice, application to or order of this Court, or further action by the respective managers, officers, directors or members of the Debtor or Reorganized Debtor.

9. To the extent that, under applicable nonbankruptcy law, any of the foregoing actions would otherwise require the consent or approval of the members, managers, or directors of the Debtor or Reorganized Debtor, this Confirmation Order shall, pursuant to section 1142 of the Bankruptcy Code, constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the directors, managers, and members of the Debtor or Reorganized Debtor, as applicable.

10. _Administrative Expense Claims._ To be eligible to receive Distributions under the Plan on account of an Administrative Expense Claim, including, but not limited to, a Claim pursuant to section 503(b)(9) of the Bankruptcy Code ("Section 503(b)(9) Claims"), that is not otherwise Allowed by the Plan, a request for payment of an Administrative Expense Claim or Proof of Claim must have been or be filed with the Bankruptcy Court on or before the Administrative Expense Claims Bar Date (unless such request for payment or Proof of Claim has already been filed with the Bankruptcy Court). **Any Administrative Expense Claims, including Section 503(b)(9) Claims, that are not asserted in accordance herewith and with section 2.1 of the Plan shall be deemed disallowed under the Plan and shall be forever barred against the Debtor, its Estate, or any of its Assets or property, and the Holder**

24

**thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.**

11. <u>Accrued Professional Compensation Claims</u>. All Professionals seeking payment of Accrued Professional Compensation Claims shall (i) file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred in this Chapter 11 Case by the date that is forty-five (45) days after the Effective Date and (ii) be paid (a) the full unpaid amount as is Allowed by the Bankruptcy Court within five (5) Business Days after the date that such Claim is Allowed by order of the Bankruptcy Court, or (b) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Accrued Professional Compensation Claim and the Debtor. **Any Accrued Professional Compensation Claim that is not asserted in accordance herewith and with section 2.2 of the Plan shall be deemed disallowed under the Plan and shall be forever barred against the Debtor, the Debtor's Estate, or any of its Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.**

12. <u>Priority Tax Claims</u>. Pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, unless otherwise agreed by a Holder of an Allowed Priority Tax Claim and the Debtor, each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of its Priority Tax Claim, payment in full in Cash of the Allowed amount of the Priority Tax Claim on the later of the Effective Date or as soon as practicable after the date when such Claim becomes an Allowed Claim.

13. <u>Payment of Statutory Fees</u>. The Debtor and the Reorganized Debtor, as applicable, will pay fees payable under 28 U.S.C § 1930(a), including fees, expenses, and

25

applicable interest payable to the United States Trustee, for each quarter (including any fraction thereof) until this Chapter 11 Case is converted, dismissed, or closed, whichever occurs first. The Debtor shall also comply with its obligations to file quarterly operating reports as required by the United States Trustee.

14.     <u>Continued Corporate Existence</u>.   The Debtor shall continue to exist as of the Effective Date as a separate corporate entity, with all the powers of a corporation under the applicable law in the jurisdiction where the Debtor is incorporated or formed and under the certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be under the Plan and require no further action or approval.

15.     <u>Vesting of Assets in the Reorganized Debtor</u>.   Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated therein, including the Liens and security interests granted under the Original Bond Documents as such Liens and security interests continue to secure the obligations related to the 2020 Bond Documents, on the Effective Date, all property in the Estate, all Causes of Action, and any property acquired by the Debtor under the Plan shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.   On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

16. <u>Cancellation of Agreements, Security Interests, and Other Interests</u>. On the Effective Date, except to the extent otherwise specifically provided in the Plan or this Confirmation Order, including to the extent certain of the Original Bond Documents continue in existence pursuant to their amendment and restatement pursuant to the 2020 Bond Documents, all notes, instruments, certificates, and other documents evidencing the Bonds, shall be cancelled and the obligations of the Debtor or the Reorganized Debtor thereunder or in any way related thereto (including, without limitation, any guarantee obligations of any non-Debtor Affiliates with respect to the Bond Claims) shall be discharged and the agents and Trustee thereunder shall be automatically and fully discharged from all duties and obligations thereunder. Except to the extent certain security interests and Liens continue in existence pursuant to the amendment and restatement of the Original Bond Documents pursuant to the 2020 Bond Documents, all existing security interests and/or Liens and/or any other Secured Claims shall also be automatically released, discharged, terminated, and of no further force and effect as of the Effective Date. Notwithstanding the foregoing, following confirmation of the Plan or the occurrence of the Effective Date, to the extent that the Original Bond Documents do not otherwise remain in effect pursuant to the 2020 Bond Documents, any credit document or agreement that governs the rights of any Holder of a Bond Claim shall continue in effect for purposes of (i) allowing Holders of such Allowed Claims to receive distributions under the Plan; (ii) allowing and preserving the rights of the agents or representative of Holders of such Claims to make distributions on account of such Allowed Claims, as provided herein; (iii) preserving all exculpations in favor of the Trustee; (iv) allowing the Trustee to enforce any rights and obligations owed to it under the Plan or the Confirmation Order; and (v) permitting

the Trustee to appear and be heard in this Chapter 11 Case, or in any proceeding in the Bankruptcy Court or any other court.

17.     <u>Exemption from Registration Requirements; Trading of Securities</u>.  The offering, issuance, and distribution of Series 2020 Bonds issued under the Plan shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act under section 3(a)(2) and 3(a)(4) of the Securities Act of 1933, as amended and under section 1145(a)(1) of the Bankruptcy Code.  Any and all Series 2020 Bonds issued under the Plan will be freely tradable under the Securities Act by the recipients thereof.

18.     <u>Organizational Documents</u>.  Subject to section 6.1 of the Plan, the Reorganized Debtor is authorized to enter into such agreements and amend its corporate governance documents to the extent necessary to implement the terms and provisions of the Plan. Notwithstanding anything to the contrary in this Confirmation Order or section 6 of the Plan, after the Effective Date, any disputes arising under the new organizational documents will be governed by the choice of law and jurisdictional provisions therein.

19.     <u>Exemption from Transfer Taxes</u>.  Pursuant to section 1146(a) of the Bankruptcy Code, any transfer from the Debtor to the Reorganized Debtor or to any entity under, in contemplation of, or in connection with the Plan or under: (i) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Debtor or the Reorganized Debtor; (ii) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (iii) the making, assignment, or recording of any lease or sublease; or (iv) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, assignments, or other instrument of transfer executed in

28

connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

20. <u>Board and Officers of the Reorganized Debtor</u>.  Except as stated below, as of the Effective Date, the members of the board of directors and officers of the Debtor as of the Petition Date shall remain in their current capacities as director and officers of the Reorganized Debtor, in each case subject to the ordinary rights and powers of the board of directors to remove or replace the officers in accordance with the Reorganized Debtor's organizational documents and any applicable employment agreements that are assumed pursuant to this Plan. Upon the Effective Date, Louis E. Robichaux IV, as the Chief Restructuring Officer, and Joe Friedman, as the independent director appointed in connection with the Refinancing Transaction, will no longer serve in such capacities.  From and after the Effective Date, each officer of the Reorganized Debtor shall serve pursuant to the terms of the Reorganized Debtor's charters and bylaws or other formation and constituent documents, and applicable laws of the Reorganized Debtor's jurisdiction of formation.

21. <u>Directors and Officers Insurance Policies</u>.  Notwithstanding anything in the Plan to the contrary, the Reorganized Debtor shall be deemed to have assumed all of the Debtor's

D&O Liability Insurance Policies under section 365(a) of the Bankruptcy Code effective as of the Effective Date. This Confirmation Order shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtor under the Plan as to which no Proof of Claim need be filed.

22.  <u>Other Insurance Policies</u>.  On the Effective Date, the Debtor's Insurance Policies in existence as of the Effective Date shall be reinstated and continued in accordance with their terms and, to the extent applicable, shall be deemed assumed by the Reorganized Debtor under section 365 of the Bankruptcy Code and section 7.1 of the Plan.  Nothing in the Plan shall affect, impair, or prejudice the rights of the insurance carriers, the insureds, or the Reorganized Debtor under the Insurance Policies in any manner, and such insurance carriers, the insureds, and Reorganized Debtor shall retain all rights and defenses under such Insurance Policies.  The Insurance Policies shall apply to and be enforceable by and against the insureds and the Reorganized Debtor in the same manner and according to the same terms and practices applicable to the Debtor, as existed prior to the Effective Date.  Following the Effective Date, the Debtor's Insurance Policies shall comply with all applicable covenants set forth in the 2020 Bond Documents.

23.  <u>Preservation of Rights of Action</u>.  In accordance with section 1123(b) of the Bankruptcy Code but subject to the releases set forth in section 9 of the Plan, including but not limited to the release of all Causes of Action against the Trustee and the Steering Committee, all Causes of Action that the Debtor may hold against any entity shall vest in the Reorganized Debtor on the Effective Date.  Thereafter, the Reorganized Debtor shall have the exclusive

30

right, authority, and discretion to determine, initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, whether arising before or after the Petition Date, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. Subject to the releases set forth in section 9 of the Plan, no entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any specific Cause of Action as any indication that the Debtor or Reorganized Debtor, as applicable, will not pursue any and all available Causes of Action. The Debtor or Reorganized Debtor, as applicable, expressly reserves all rights to prosecute any and all Causes of Action against any entity, except as otherwise expressly provided in the Plan or this Confirmation Order.

24.     <u>Corporate Action</u>.  Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, directors, managers, or officers of the Debtor, the Reorganized Debtor, or any other entity, including: (i) the assumption of Executory Contracts; (ii) the execution of and entry into the 2020 Bond Documents; (iii) the issuance and distribution of the Series 2020 Bonds; and (iv) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan involving the company structure of the Reorganized Debtor and any company action required by the Debtor or Reorganized Debtor, as applicable, in connection therewith shall be deemed to have occurred on and shall be in effect as of the Effective Date without any requirement of further action by the member, directors, managers, authorized persons, or officers of the Debtor or Reorganized Debtor, as applicable.

25. On or prior to the Effective Date, the appropriate officers, directors, managers, or authorized persons of the Debtor or Reorganized Debtor, as applicable, shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, certificates of incorporation, certificates of formation, bylaws, operating agreements, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Debtor or the Reorganized Debtor, as applicable, including (i) the 2020 Bond Documents, (ii) the Series 2020 Bonds, and (iii) any and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

26. <u>Effectuating Documents; Further Transactions</u>. Prior to, on, and after the Effective Date, the Debtor and Reorganized Debtor and the directors, managers, officers, authorized persons, and members of the boards of directors or managers and directors thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and provisions of the Plan and the 2020 Bond Documents, without the need for any approvals, authorizations, actions, or consents except for those expressly required under the Plan. All counterparties to any documents described in this paragraph are authorized to and may execute any such documents as may be required or provided by such documents without further order of the Bankruptcy Court.

27. <u>Assumption of Executory Contracts and Unexpired Leases</u>. Except as otherwise provided in the Plan, each of the Executory Contracts of the Debtor, including the Residency

Agreements, shall be deemed assumed as of the Effective Date, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, pursuant to section 365 of the Bankruptcy Code. The Confirmation Order may constitute an order of the Bankruptcy Court approving the assumption of each of the Executory Contracts and unexpired leases, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code and effective on the occurrence of the Effective Date. Except as otherwise provided in the Plan or agreed to by the Debtor and the applicable counterparty, each Executory Contract and unexpired lease shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such Executory Contract or unexpired lease.

28.    Assumption of any Executory Contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy related defaults, arising under any assumed Executory Contract or unexpired lease at any time before the effective date of the assumption.

29.    Nothing contained in the Plan shall constitute an admission by the Debtor or the Reorganized Debtor that any such contract or lease is in fact an Executory Contract or that the Debtor or the Reorganized Debtor has any liability thereunder.

30.    In the event that the Effective Date does not occur, the Bankruptcy Court retains jurisdiction with respect to any request to extend the deadline for assuming or rejecting unexpired leases under section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

31.    <u>Indemnification</u>.  On and as of the Effective Date, the Indemnification Provisions will be assumed and irrevocable and will survive the effectiveness of the Plan, and the Reorganized Debtor's governance documents will provide for the indemnification, defense, reimbursement, exculpation, and/or limitation of liability of and advancement of fees and expenses to the Debtor's and the Reorganized Debtor's current and former directors, officers, employees, and agents to the fullest extent permitted by law and at least to the same extent as the certificate of incorporation, bylaws, or similar organizational documents of the Debtor as of the Petition Date, against any claims or Causes of Action whether direct or derivative, liquidated or unliquidated, fixed, or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted.  The Reorganized Debtor shall not amend and/or restate its certificate of incorporation, bylaws, or similar organizational document before or after the Effective Date to terminate or materially adversely affect (i) the Reorganized Debtor's obligations referred to in the immediately preceding sentence or (ii) the rights of such managers, directors, officers, employees, or agents referred to in the immediately preceding sentence.  Notwithstanding anything to the contrary herein, the Reorganized Debtor shall not be required to indemnify the Debtor's managers, directors, officers, or employees for any claims or Causes of Action for which indemnification is barred under applicable law, the Debtor's organizational documents, or applicable agreements governing the Debtor's indemnification obligations.

32.    <u>Conditions to Effective Date</u>.  The Plan shall not become effective unless and until the conditions set forth in section 8.2 of the Plan have been satisfied or waived pursuant to section 8.3 of the Plan.  In the event that one or more of the conditions specified in section 8.2 of the Plan have not been satisfied or waived in accordance with section 8.3 of the Plan, (i) this

34

Confirmation Order shall be vacated, (ii) the Plan shall be null and void in all respects, and (iii) nothing contained in the Plan or the Disclosure Statement shall: (A) constitute a waiver or release of any claims by or Claims against the Debtor; (B) prejudice in any manner the rights of the Debtor, any Holders of Claims or Interests or any other Person; or (C) constitute an admission, acknowledgment, offer or undertaking by the Debtor, any Holders of Claims or Interests or any other Person in any respect.

33.     <u>Compromise of Controversies</u>.  Pursuant to section 1123 of the Bankruptcy Code and in consideration for the classification, distributions, releases and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved under the Plan.  The entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that any such compromise or settlement is in the best interests of the Debtor, its Estate, and any Holders of Claims and Interests and is fair, equitable and reasonable.   Notwithstanding anything contained herein to the contrary, the allowance, classification and treatment of all Allowed Claims and Interests and their respective distributions (if any) and treatments hereunder, takes into account the relative priority and rights of the Claims and the Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or otherwise.  As of the Effective Date, any and all contractual, legal and equitable subordination rights, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or otherwise, relating to the allowance, classification and treatment of all Allowed Claims and Interests and

their respective distributions (if any) and treatments hereunder, are settled, compromised, terminated and released pursuant hereto; provided, however, that nothing contained herein shall preclude any Person or entity from exercising their rights under and consistent with the terms of the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with the Plan. Notwithstanding the foregoing, any subordinated debt expressly provided for in the Plan or the 2020 Bond Documents shall remain subordinated to the extent provided for in such documents.

34.    <u>Releases by the Debtor</u>.  On and after the Effective Date, the Released Parties are deemed released and discharged by the Debtor, the Reorganized Debtor, and their Estates from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtor, the Reorganized Debtor, and their Estates would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, the Debtor or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the Debtor's in- or out-of-court restructuring efforts, intercompany transactions, this Chapter 11 Case, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the Refinancing Transaction, the Plan, or any other restructuring transaction, contract, instrument, release, or other agreement or document created or entered

36

into in connection with the Disclosure Statement, the Plan Support Agreement, or the Plan, the filing of this Chapter 11 Case, the pursuit of Confirmation of the Plan, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date (collectively, the "Debtor Released Claims"), other than Claims or liabilities arising out of or relating to a Released Party's willful misconduct or intentional fraud as determined by a Final Order of the Bankruptcy Court; provided that any right to enforce the Plan and the Confirmation Order is not so released by section 9.2 of the Plan.

35.     Releases by Holders of Claims. AS OF THE EFFECTIVE DATE, EXCEPT (I) FOR THE RIGHT TO ENFORCE THE PLAN OR (II) AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THIS CONFIRMATION ORDER, INCLUDING THE 2020 BOND DOCUMENTS, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, INCLUDING THE OBLIGATIONS OF THE DEBTOR UNDER THE PLAN AND THE CONTRIBUTIONS OF THE RELEASED PARTIES TO FACILITATE AND IMPLEMENT THE PLAN, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, THE RELEASED PARTIES SHALL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER, RELEASED, AND DISCHARGED BY (A) HOLDERS OF BOND CLAIMS WHO HAVE NOT ELECTED TO OPT-OUT OF THE RELEASES PROPOSED UNDER THE PLAN AND (B) THE PARTIES TO THE PLAN SUPPORT AGREEMENT, FROM ANY AND ALL CLAIMS, INTERESTS OR CAUSES OF ACTION WHATSOEVER, WHETHER ACCRUED OR UNACCRUED,

37

WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING BEFORE THE EFFECTIVE DATE, AS OF THE EFFECTIVE DATE OR ARISING THEREAFTER, IN LAW, AT EQUITY, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF STATUTES (INCLUDING BUT NOT LIMITED TO THE FEDERAL OR STATE SECURITIES LAWS), OR OTHERWISE, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, OR OTHER OCCURRENCE OR CIRCUMSTANCES EXISTING OR TAKING PLACE PRIOR TO OR ON THE EFFECTIVE DATE ARISING FROM OR RELATED IN ANY WAY TO THE DEBTOR, THE DEBTOR'S REFINANCING AND THE TRANSACTIONS CONTEMPLATED THEREIN OR HEREIN, THIS CHAPTER 11 CASE, THE NEGOTIATION, FORMULATION, PREPARATION OR CONSUMMATION OF THE PLAN, THE PLAN SUPPORT AGREEMENT, THE DEFINITIVE DOCUMENTS, OR ANY RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, PROVIDED THAT THE RELEASED PARTIES SHALL NOT BE RELEASED FROM ANY ACT OR OMISSION THAT CONSTITUTES ACTUAL FRAUD, GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR A CRIMINAL ACT AS DETERMINED BY A FINAL ORDER.

36. <u>Exculpation</u>. None of the Exculpated Parties shall have or incur and each Exculpated Party is hereby released and exculpated from, any Claim, obligations, suit, judgment, damage, demand, debt, right, cause of action, remedy, loss and liability for any Claim in connection with or arising out of the administration of this Chapter 11 Case, the negotiation and pursuit of the Plan Support Agreement, the Refinancing Transaction, the Plan, or the

solicitation of votes for, or confirmation of, the Plan, the funding or consummation of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of securities under or in connection with the Plan, or the transactions in furtherance of any of the foregoing, except for: (i) the liability of any entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan, including the 2020 Bond Documents; or (ii) the liability of any entity that would otherwise result from any such act or omission to the extent that such act or omission is determined to have constituted actual fraud, gross negligence, willful misconduct or a criminal act as determined by a Final Order.

37. <u>Satisfaction of Claims</u>. To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by the Plan or the Confirmation Order, effective as of the Effective Date, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims, Interests and Causes of Action of any kind or nature whatsoever against the Debtor or any of its Assets or properties, including any interest accrued on such Claims or Interests from and after the Petition Date, and regardless of whether any property shall have been abandoned by order of the Bankruptcy Court, distributed or retained under the Plan on account of such Claims, Interests or Causes of Action. Except as otherwise expressly provided by the Plan or the Confirmation Order, upon the Effective Date, the Debtor and its Estate shall be deemed discharged and released under and to the fullest extent provided under sections 524 and 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims of any kind or nature whatsoever, including, but not

39

limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code. Such discharge shall void any judgment obtained against the Debtor or the Reorganized Debtor at any time, to the extent that such judgment relates to a discharged Claim.

38. <u>Injunction</u>. Except as otherwise expressly provided in the Plan or this Confirmation Order, including but not limited to any right arising under or related to the 2020 Bond Documents, from and after the Effective Date, all Persons and entities are, to the fullest extent provided under section 524 and other applicable provisions of the Bankruptcy Code, permanently enjoined from (i) commencing or continuing, in any manner or in any place, any suit, action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff or right of subrogation of any kind; or (v) commencing or continuing in any manner any action or other proceeding of any kind, in each case on account of or with respect to any claim, demand, liability, obligation, debt, right, cause of action, equity interest, or remedy released or to be released, settled or to be settled or discharged or to be discharged under the Plan or this Confirmation Order against any person or entity so released or discharged (or the property or estate of any person or entity so released, discharged). All injunctions or stays provided for in this Chapter 11 Case under section 105 or section 362 of the Bankruptcy Code, or otherwise, and in existence on the confirmation date, shall remain in full force and effect until the Effective Date.

39. <u>Immediate Binding Effect</u>. Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or any other Bankruptcy Rule, but subject to section 8.2 of the Plan, on the Effective Date, and effective as of the Effective Date, the Plan shall bind, and shall be deemed binding

upon, the Debtor, the Reorganized Debtor, any and all Holders of Claims against and Interests in the Debtor, all persons and entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each person acquiring property under the Plan, any and all non-debtor parties to Executory Contracts and unexpired leases with the Debtor and the respective successors and assigns of each of the foregoing, to the maximum extent permitted by applicable law, and notwithstanding whether or not such person or entity (i) will receive or retain any property, or interest in property, under the Plan, (ii) has filed a Proof of Claim or Interest in this Chapter 11 Case or (iii) failed to vote to accept or reject the Plan, affirmatively voted to reject the Plan or is conclusively presumed to reject the Plan.

40. <u>Protection Against Discriminatory Treatment</u>. To the extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the United States Constitution, all Persons and Entities, including Governmental Units, shall not discriminate against the Reorganized Debtor or deny, revoke, suspend or refuse to renew a license, permit, charter, franchise or other similar grant to, condition such a grant to, discriminate with respect to such a grant, against the Reorganized Debtor, or another Person or entity with whom the Reorganized Debtor has been associated, solely because the Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of this Chapter 11 Case (or during this Chapter 11 Case but before the Debtor is granted or denied a discharge) or has not paid a debt that is dischargeable in this Chapter 11 Case.

41. <u>Preservation of Privilege and Defenses</u>. No action taken by the Debtor or Reorganized Debtor in connection with the Plan shall be (or be deemed to be) a waiver of any privilege or immunity of the Debtor or Reorganized Debtor, as applicable, including any

41

attorney client privilege or work-product privilege attaching to any documents or communications (whether written or oral).

42. <u>Injunction Against Interference with the Plan</u>. As of the date of this Confirmation Order, all Holders of Claims and Interests, the Debtor, and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the Debtor's, the Reorganized Debtor's and their respective affiliates', employees', advisors', officers' and directors', and agents' implementation or consummation of the Plan.

43. <u>Release of Liens</u>. Except as otherwise provided in the Plan, this Confirmation Order, the 2020 Bond Documents, including to the extent the 2020 Bond Documents amend or restate the Original Bond Documents, or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with, and conditioned upon, the applicable Distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released. Except as otherwise provided in the Plan, the Confirmation Order, the 2020 Bond Documents, including to the extent the 2020 Bond Documents amend or restate the Original Bond Documents, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Debtor's Estate shall be fully released on the Effective Date without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code.

44. <u>Consents and Approvals</u>. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or governmental authority with respect to the implementation or consummation of the Plan and any other acts and transactions referred to in or contemplated by the Plan, the Disclosure Statement, any documents, instruments or agreement that may be necessary or appropriate for the implementation or consummation of the Plan, and any other acts referred to in, or contemplated by the Plan.

45. <u>Statutory Liens of Residents</u>. Notwithstanding any provision in the Plan or this Confirmation Order to the contrary, any statutory lien of a Resident pursuant to section 246.111 of the Texas Health and Safety Code shall not be released.

46. <u>Notice of Default Under 2020 Bond Documents</u>. Upon the occurrence of an event of default under the 2020 Bond Documents, if any, the Reorganized Debtor shall provide notice of such occurrence to the Financial Analysis Section, Financial Regulation Division, Texas Department of Insurance.

47. <u>Governmental Units</u>. Unless otherwise agreed or consented to by a Governmental Unit, no provision in the Plan or this Confirmation Order (a) releases or exculpates any Released Party or Exculpated Party from any claim or cause of action held by a Governmental Unit, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States, or (b) enjoins, limits, impairs or delays any Governmental Unit from commencing or continuing any claims, suit, action, proceeding, cause of action, or investigation against any Released Party or Exculpated Party.

48. <u>Retention of Jurisdiction</u>. Notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, on and after the Effective Date, pursuant to section 11

of the Plan and sections 105 and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and have exclusive jurisdiction over any matters arising under the Bankruptcy Code, arising in or related to this Chapter 11 Case or the Plan, or that relates to the matters set forth in section 11 of the Plan.

49.      Documents and Instruments.  Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Confirmation Order.

50.      The Automatic Stay.  The stay in effect in this Chapter 11 Case pursuant to sections 105 or 362(a) of the Bankruptcy Code shall continue to be in effect until the Effective Date, and at that time shall be dissolved and of no further force of effect, subject to the injunctions set forth in the Plan, this Confirmation Order, and/or sections 524 and 1141 of the Bankruptcy Code; *provided, however*, that nothing herein shall bar the filing of financing documents (including Uniform Commercial Code financing statements, security agreements, leases, mortgages, trust agreements, and bills of sale) or the taking of such actions as are necessary to effectuate the transactions specifically contemplated by the Plan or by this Confirmation Order prior to the Effective Date.

51.      Conflicts Between Confirmation Order and Plan.  The provisions of this Confirmation Order and the Plan shall be construed in a manner consistent with each other so as to effect the purpose of each; *provided, however*, that, if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then solely to the extent of such inconsistency, the provisions of this

44

Confirmation Order shall govern and any provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

52. <u>Provisions of Plan and Confirmation Order Nonseverable and Mutually Dependent</u>. The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

53. <u>Reversal/Stay/Modification/Vacatur of Confirmation Order</u>. If any or all of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Bankruptcy Court or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtor or the Reorganized Debtor, as applicable, pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

54. <u>Governing Law</u>. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of the Plan and the transactions consummated or to be consummated in connection therewith.

55. <u>Applicable Non-Bankruptcy Law</u>. Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan and related

documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

56. <u>Effectiveness of All Actions</u>. All actions authorized to be taken pursuant to the Plan shall be effective on, prior to, or after, the Effective Date pursuant to this Confirmation Order, without further application to, or order of, the Bankruptcy Court, or further action by the respective officers or directors of the Debtor and with the effect that such actions has been taken by unanimous action of such officers and directors.

57. <u>Notice of Confirmation Order and Occurrence of Effective Date</u>. In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtor shall serve notice of the entry of this Confirmation Order and the occurrence of the Effective Date, substantially in the form annexed hereto as **<u>Exhibit B</u>** (the "<u>Notice of Confirmation and Effective Date</u>"), to the United States Trustee, all parties that hold a Claim or Interest in this Chapter 11 Case, and any other party requesting notice under Bankruptcy Rule 2002. The Notice of Confirmation and Effective Date shall also be posted on the Debtor's case information website, available at https://dm.epiq11.com/Tarrant. Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Confirmation Order and the occurrence of the Effective Date.

58. <u>Substantial Consummation</u>. On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

59. <u>No Waiver</u>. The failure to specifically include any particular provision of the Plan in this Confirmation Order will not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Bankruptcy Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

60. _Waiver of Stay_. The stay of this Confirmation Order provided by any Bankruptcy Rule (including, without limitation, Bankruptcy Rules 3020(e), 6004(h), and 6006(d)) is hereby waived. This Confirmation Order shall be effective and enforceable immediately upon its entry by the Bankruptcy Court.

### ###END OF ORDER###

Order submitted by:

**DLA PIPER LLP (US)**

By: _/s/ Andrew B. Zollinger_
Andrew B. Zollinger, State Bar No. 24063944
DLA Piper LLP (US)
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 743-4500
Facsimile: (214) 743-4545
E-mail: andrew.zollinger@dlapiper.com

– and –

Thomas R. Califano (admitted _pro hac vice_)
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
E-mail: thomas.califano@dlapiper.com

– and –

Rachel Nanes (admitted _pro hac vice_)
DLA Piper LLP (US)
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131
Telephone: (305) 423-8563
Facsimile: (305) 675-8206
E-mail: rachel.nanes@dlapiper.com

_Counsel for the Debtor_

## Exhibit A

## THE PLAN

**<u>Exhibit B</u>**

**NOTICE OF CONFIRMATION AND EFFECTIVE DATE**

Andrew B. Zollinger, State Bar No. 24063944
DLA Piper LLP (US)
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 743-4500
Facsimile: (214) 743-4545
E-mail: andrew.zollinger@dlapiper.com

*Counsel for the Debtor*

Thomas R. Califano (admitted *pro hac vice*)
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
E-mail: thomas.califano@dlapiper.com

Rachel Nanes (admitted *pro hac vice*)
DLA Piper LLP (US)
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131
Telephone: (305) 423-8563
Facsimile: (305) 675-8206
E-mail: rachel.nanes@dlapiper.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | § |
| | § CHAPTER 11 |
| **TARRANT COUNTY SENIOR LIVING** | § |
| **CENTER, INC.** [1] | § CASE NO. 19-33756 (SGJ) |
| | § |
| **Debtor.** | |

### NOTICE OF (I) ENTRY OF ORDER CONFIRMING THE DEBTOR'S
### FIRST AMENDED PREPACKAGED PLAN OF REORGANIZATION PURSUANT TO
### CHAPTER 11 OF THE BANKRUPTCY CODE AND (II) EFFECTIVE DATE

**PLEASE TAKE NOTICE** that an order (the "Confirmation Order") of the Honorable Stacey G.C. Jernigan, United States Bankruptcy Judge for the Northern District of Texas, approving the *Debtor's First Amended Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, dated December 17, 2019 [Docket No. 105] (including all exhibits thereto and as the same may be further amended, modified or supplemented from time to time, the "Plan"), was entered on December [●], 2019 [Docket No. ●]. Unless otherwise defined in this notice, capitalized terms used herein shall have the meanings ascribed to them in the Plan and Confirmation Order.

**PLEASE TAKE FURTHER NOTICE** that the Effective Date of the Plan occurred on January [●], 2020.

**PLEASE TAKE FURTHER NOTICE** that the Plan and its provisions are binding on the Debtor, the Reorganized Debtor, the Trustee and any holder of a Claim against or Interest in the Debtor, as provided in the Plan.

---

[1] The last four digits of the Debtor's federal tax identification number are 8602.

**PLEASE TAKE FURTHER NOTICE** that, as set forth in the Confirmation Order, the deadline to file a request for payment of an Administrative Expense Claim must be filed with the Bankruptcy Court on or before thirty (30) days after the Effective Date (unless such request for payment or Proof of Claim has already been filed with the Bankruptcy Court).

**PLEASE TAKE FURTHER NOTICE** that copies of the Plan, Confirmation Order, and other related documents may be (i) inspected in the offices of the Clerk of the Court during normal business hours; (ii) downloaded from the Court's web site at http://www.txnb.uscourts.gov/ (please note that prior registration with the PACER Service Center and payment of a fee may be required to access such documents); and (iii) downloaded free of charge from the website of Epiq Corporate Restructuring, LLC, the Debtor's solicitation, claims, and noticing agent, https://dm.epiq11.com/Tarrant. Requests may also be made to counsel for the Debtor using the contact information below.

Dated: January [●], 2020
      Dallas, Texas

**DLA PIPER LLP (US)**

By: _/s/ Andrew B. Zollinger_
Andrew B. Zollinger, State Bar No. 24063944
DLA Piper LLP (US)
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 743-4500
Facsimile: (214) 743-4545
E-mail: andrew.zollinger@dlapiper.com

– and –

Thomas R. Califano (admitted *pro hac vice*)
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
E-mail: thomas.califano@dlapiper.com

– and –

Rachel Nanes (admitted *pro hac vice*)
DLA Piper LLP (US)
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131
Telephone: (305) 423-8563
Facsimile: (305) 675-8206
E-mail: rachel.nanes@dlapiper.com

*Counsel for the Debtor*